UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

Molekule Group, Inc.                                      Case No. 23-18094-EPK
                                                          (Jointly Administered)
and

Molekule, Inc.                                            Case No. 23-18093-EPK

　　　　Debtors.                                          Chapter 11
_____/

**DISCLOSURE STATEMENT FOR DEBTORS'**
**AMENDED JOINT PLAN OF REORGANIZATION**

October 30, 2023


Bradley S. Shraiberg
Eric Pendergraft
SHRAIBERG PAGE P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: bss@slp.law
Email: ependergraft@slp.law

**ATTORNEYS FOR THE DEBTORS**


**NOTE:  SECTIONS 8.14 AND 11.04 OF THE PLAN CONTAIN RELEASES OF THIRD
PARTIES**

{2471/000/00569632}

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

        A.      Overview of the Plan .............................................................................3
        B.      Voting Instructions................................................................................4

II.     BACKGROUND OF THE DEBTORS .................................................................4

III.    THE CHAPTER 11 CASE ....................................................................................7

        A.      Commencement of the Chapter 11 Case..............................................7
        B.      Retained Professionals .........................................................................7
        C.      Debtor in Possession Financing ...........................................................7
        D.      Wages and Critical Vendors ................................................................8
        E.      The Claims Process...............................................................................8
        F.       Reserved...............................................................................................9

IV.     CHAPTER 11 PLAN..............................................................................................9

        A.      Plan Overview.......................................................................................9
        B.      Substantive Consolidation ...................................................................9
        C.      Unclassified Claims............................................................................10
        D.      Treatment of Claims and Interests .....................................................11
        E.      Future Management and Related Salaries...........................................15
        F.      Distributions Under the Plan..............................................................16
        G.      Procedures for Allowance or Disallowance of Disputed Claims.........17
        H.      Distributions Withheld for Disputed Claims .....................................19
        I.      Disbursing Agent and Plan Administrator ..........................................19
        J.      Executory Contracts and Unexpired Leases ......................................20
        K.      Corporate Existence and Equity..........................................................23
        L.      The Reorganized Debtor and Vesting of Assets ...............................23
        M.      Corporate Action.................................................................................24
        N.      Discharge, Exculpation, Injunction, Release and Limitation of
                Liability...............................................................................................24
                1.      Discharge of Debtors and Reorganized Debtor ......................24
                2.      Injunction .................................................................................24
                3.      Release by Estates of Officers, Managers, and Directors........25
                4.      Injunction Against Interference with the Plan ........................25
                5.      Exculpation ..............................................................................26
                6.      Votes Solicited in Good Faith..................................................26
                7.      Term of Bankruptcy Injunction or Stay ..................................26
        O.      Retention of Jurisdiction ....................................................................26
        P.      Reserved...............................................................................................28
        Q.      Reserved...............................................................................................28

V.      CONFIRMATION OF THE PLAN..............................................................................28

        A.      Solicitation of Votes .....................................................................................288
        B.      Confirmation Hearing ...................................................................................28
        C.      Confirmation Standards .................................................................................29

VI.     FUNDING AND FEASIBILITY OF THE PLAN ...............................................29

        A.      Funding of the Plan.......................................................................................29
        B.      Risks to Creditors.........................................................................................29
        C.      Best Interests Test and Liquidation Analysis...............................................29
        D.      Feasibility......................................................................................................30

VII.    ALTERNATIVES TO THE PLAN .......................................................................31

                1.      Liquidation Under Chapter 7 ...............................................................31
                2.      Alternative Plan of Reorganization......................................................31
                3.      Dismissal of the Chapter 11 Case…………………………………….31

        CONCLUSION.................................................................................................................32

{2471/000/00569632}

**EXHIBIT INDEX**

EXHIBIT A:        Joint Chapter 11 Plan

EXHIBIT B:        Liquidation Analysis

EXHIBIT C:        Projection

### DISCLOSURE STATEMENT FOR DEBTORS'
### JOINT PLAN OF REORGANIZATION

---

**DEBTORS RESERVE THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.**

---

## I.    INTRODUCTION

Molekule Group, Inc. ("Molekule Group") and Molekule, Inc. ("Molekule Inc.") (together, the "Debtors") (together, the "Debtors") provide this Disclosure Statement (the "Disclosure Statement") to all of the Debtors' creditors and stockholders in order to permit such creditors and stockholders to make an informed decision in voting to accept or reject the Debtors' Joint Plan of Reorganization (the "Plan") filed on October 3, 2023 with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in connection with the above-captioned case (the "Chapter 11 Case"). A copy of the Plan is attached to this Disclosure Statement as **EXHIBIT A**. Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

The Disclosure Statement is presented to certain holders of Claims[1] against or Interests in the Debtors in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the Debtors' creditors and stockholders, to make an informed judgment whether to accept or reject the Plan. The Disclosure Statement may not be relied upon for any purpose other than that described above.

**THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED. THIS DISCLOSURE STATEMENT IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. EACH CREDITOR AND STOCKHOLDER IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.**

**NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THE VALUE OF ITS PROPERTY) ARE AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

---

[1] Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan.

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF THE DEBTORS AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN. THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE DEBTORS' ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN. ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, THE DEBTORS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS IS CORRECT.**

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED. A STATEMENT OF THE ASSETS AND LIABILITIES OF THE DEBTORS AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.    THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.    ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN OR SECURITIES OF, THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.**

**THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.**

Pursuant to the Bankruptcy Code, the Plan was filed by the Debtors with the Bankruptcy Court on October 3, 2023 and this Disclosure Statement was filed thereafter.  The Bankruptcy Court will schedule a hearing on approval of this Disclosure Statement and on confirmation of the Plan (the "Confirmation Hearing") to be held at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, FL 33401.  At the Confirmation Hearing, the Bankruptcy Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact Shraiberg Page P.A., 2385 NW Executive Center Drive, Ste. 300, Boca Raton, FL 33431, Phone: (561) 443-0800, Facsimile: (561) 998-0047.

## A.     Overview of the Plan

THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.  THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE PLAN DOCUMENTS.  CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN SECTION IV OF THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF.  THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization.  The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors.  With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation.  Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and interests in a debtor's bankruptcy estate.

The Plan divides the Claims against, and Interests in, the Debtors into Classes.  Certain Claims – in particular, Administrative Claims – remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code.  The Plan assigns all other Claims and Interests as described below.

| Class | Description | Approximate Consolidated Amount | Estimated Recovery | Status |
|---|---|---|---|---|
| N/A | Administrative Claims – Professionals | Unknown | 100% distribution | Unclassified and not entitled to vote |
| N/A | Administrative Post-Petition Expenses | Unknown | 100% distribution | Unclassified and not entitled to vote |
| N/A | DIP Claim | $3,000,000 | Equity Interest Distribution | Unclassified and not entitled to vote |
| N/A | Priority Tax Claims | Unknown | 100% distribution | Unclassified and not entitled to vote |
| N/A | US Trustee's Fees | Unknown | 100% distribution | Unclassified and not entitled to vote |
| 1 | Allowed SVB Senior Secured Claim | $4,463,399.92 | 100% distribution | Impaired and entitled to vote. |
| 2 | Allowed SVB Mezzanine Secured Claims | $30,000,000 | Equity Interest Distribution | Impaired and entitled to vote. |
| 3 | Allowed Trinity Secured Claim | $2,228,259.19 | 100% distribution | Impaired and entitled to vote. |

| Class | Description | Approximate Consolidated Amount | Estimated Recovery | Status |
|-------|-------------|---------------------------------|--------------------|--------|
| 4 | Allowed Warehouse Secured Claim | $242,067.07 | 100% distribution | Unimpaired and deemed to accept. |
| 5 | Allowed Unsecured Priority Wage Claims | Unknown | 100% distribution | Unimpaired and deemed to accept. |
| 6 | Allowed Unsecured Priority Benefit Plan Contribution Claims | Unknown | 100% distribution | Unimpaired and deemed to accept. |
| 7 | Allowed Unsecured Priority Consumer Deposit Claims | Unknown | 100% distribution | Unimpaired and deemed to accept. |
| 8 | Allowed General Unsecured Claims | $10,825,000 | 1.39% | Impaired |
| 9 | Allowed Intercompany Claims | Unknown | No distribution. | Impaired. Deemed to reject. |
| 10 | Allowed Equity Interests | N/A | No distribution. | Impaired. Deemed to reject |

## B.      Voting Instructions

The Bankruptcy Code entitles only holders of impaired claims or interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims or interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on the Plan. Holders of classes of claims or interests that will receive no distributions under a proposed plan are deemed to reject that plan and, therefore, not entitled to vote on the Plan.

Under the Debtors' Plan, Classes 1, 2, 3 and 8 are impaired and entitled to vote on the Plan. Classes 4, 5, 6, and 7 are unimpaired and are conclusively presumed to have accepted the Plan and the solicitation of acceptances with respect to such Class therefore is not required under section 1126(f) of the Bankruptcy Code. Classes 9 and 10 will not receive any distribution, are not entitled to vote on the Plan, and are deemed not to have accepted the Plan under section 1126(g).

## II.      <u>BACKGROUND OF THE DEBTORS</u>

The Debtors are: (a) Molekule Group, a Delaware corporation which is a holding company; and (b) Molekule Inc, a Delaware corporation which is an operating company. Molekule, Inc. is a wholly owned subsidiary of Molekule Group.

The shares of Molekule Group are traded on the Nasdaq Stock Exchange under ticker symbol MKUL.

Molekule, Inc. manufactures air purifiers which utilize a mixture of HEPA and carbon filtration and photo electrochemical oxidation or a mixture of HEPA and carbon filtration and UV-C sterilization.

{2471/000/00569632}

The present structure of the Debtors resulted from the January 2023 merger of AeroClean Technologies, Inc. (Nasdaq ticker symbol AERC) and Molekule, Inc. in an all-stock transaction wherein Molekule, Inc.'s shareholders ended up owning 49.5% of AeroClean, AeroClean owned Molekule, Inc., and AeroClean changed its name to Molekule Group, Inc.

The Debtors do not own any real property. The Debtors' principal address is 10455 Riverside Drive, Suite 100, Palm Beach Gardens, Florida 33410. Molekule, Inc. also operates from a manufacturing facility in Lakeland, Florida.

Foundry Group Next, L.P. ("Foundry") is Molekule Group's largest shareholder and is affiliated with Brad Feld, a member of Molekule Group's board of directors. Amin J. Khoury "Khoury") is Molekule Group's second largest shareholder and is chairman of the board of directors of Molekule Group. Armistice Capital Master Fund Ltd. ("Armistice") is Molekule Group's third largest shareholder.

The Debtors' largest creditor is Silicon Valley Bank, a division of First-Citizens Bank & Trust Company ("SVB"). Molekule Inc. and SVB are parties to the Amended and Restated Loan and Security Agreement dated August 29, 2019 (the "Senior Loan Agreement"). Molekule Inc. and SVB are also parties to the Mezzanine Loan and Security Agreement dated March 22, 2021 (the "Mezzanine Loan Agreement"). The Debtors and SVB subsequently entered into the Joinder and Sixth Loan Modification Agreement dated January 12, 2023 (the "Senior Joinder") and the Joinder and Third Loan Modification Agreement dated January 12, 2023 (the "Mezzanine Joinder"), the result of which is that Molekule, Inc. and Molekule Group are jointly and severally liable on the Senior Loan Agreement and the Mezzanine Loan Agreement. The Senior Loan Agreement and the Mezzanine Loan Agreement are each secured by a senior lien on substantially all of the Debtors' personal property, excluding the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment. The outstanding balance on the Senior Loan Agreement is approximately $4,463,399.92, and includes the approximately $333,221.00 in obligations of the Debtors under a credit card account with SVB. The outstanding balance on that Mezzanine Loan Agreement is approximately $30,000,000 and is secured by a junior lien on the same collateral that secures SVB's Senior Loan Agreement. As to the Mezzanine Loan Agreement, SVB holds the same with , SVB Innovation Credit Fund VIII, L.P. ("SVBC").

Pursuant to the Master Lease Agreement dated June 19, 2020, and related agreements, documents, promissory notes, financing statements or instruments, as have been further amended, modified, restated, replaced or supplemented from time to time (the "Trinity Equipment Lease Documents"), Molekule, Inc. financed, and leased, certain equipment located at Molekule, Inc.'s Lakeland, Florida facility from Trincap Funding, LLC (as successor in interest to Trinity Capital Inc.), including any successor in interest thereof ("Trinity"). The Debtors and Trinity subsequently entered into the Joinder to Master Lease Agreement dated January 12, 2023 (the "Trinity Joinder"), resulting in Molekule, Inc. and Molekule Group each being jointly and severally liable on the Trinity Equipment Lease Documents. The Trinity equipment lease obligations are secured by a junior lien on the general assets of the Debtors, and a senior lien on certain "Equipment," as defined in the Trinity Equipment Lease Documents including all proceeds, claims, and causes of action including the proceeds of any arbitration award therefrom, including a senior lien on a certain arbitration action concerning such equipment that is pending in Germany (the "Trinity

Equipment").[2] The outstanding prepetition balance under the Trinity Equipment Lease Documents is not less than **$2,228,259.19** consisting of (x) [$1,608,319.90] in outstanding monthly rent payments as of the Petition Date; (y) $619,939.29 in final payments plus (z) all additional accrued and unpaid interest, fees, costs, expenses, indemnification obligations, charges, and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Trinity Equipment Lease Documents (collectively, the "Trinity Equipment Lease Obligations")

The Debtors are party to several equipment leases. Specifically, Molekule, Inc. leases certain laboratory equipment (the "De Lage Equipment") from De Lage Landen Financial Services, Inc. pursuant to the Lease Agreement dated March 1, 2019. Molekule, Inc. leases a forklift system (the "Raymond Equipment") from Raymond Leasing Corporation pursuant to the Equipment Master Lease Agreement dated March 4, 2019. Molekule, Inc. leases a different forklift system (the "Toyota Equipment") from Nationwide Lift Trucks Inc. pursuant to the Equipment Lease Agreement dated July 28, 2021.

The Debtors attempted to raise capital necessary to avoid bankruptcy through a public rights offering pursuant to a Form S-1 Registration Statement (the "Registration Statement") filed by Molekule Group with the Securities and Exchange Commission ("SEC") on September 5, 2023. That rights offering contained three conditions: first, that the gross proceeds would equal or exceed $10 million; second, the Debtors reach an agreement with SVB to restructure their indebtedness on acceptable terms; and third, the Debtors renegotiate or otherwise reach a settlement with respect to the San Francisco Lease (as defined below) on acceptable terms. Foundry, Khoury, and Armistice all informed the Debtors of their interest in participating in the rights offering in an approximate amount based on their pro rata ownership of Molekule Group. As disclosed in a Form 8-k filed with the SEC on September 20, 2023, the Debtors could not reach a settlement regarding the San Francisco Lease. Accordingly, Molekule Group withdrew the Registration Statement. Foundry, Khoury, and Armistice agreed to fund the DIP Financing (as defined below) in amounts equal to the amounts they would have expended in consummating the rights offering pursuant to the Registration Statement. The Debtors did not receive interest in the rights offering from any other party.

Prepetition, the Debtors engaged in extensive negotiations with SVB, SVBC, and Trinity (together, the "Prepetition Lenders") and the post-petition lenders Foundry, Bridge Coast Capital, LLC ("BCC"), Armistice, and SVBC (together, the "DIP Lenders"). Those negotiations produced the Restructuring Support Agreement dated October 2, 2023 (the "RSA") by and among the Debtors, the Prepetition Lenders, and the DIP Lenders. The RSA provides agreement on: the relative priority of the Prepetition Lenders, the terms of the Debtors' use of cash collateral, plan treatment for the Prepetition Lenders, post-petition financing including a priming lien, and terms of a confirmable plan of reorganization supported by the parties to the RSA, who represent all of the Debtors' significant prepetition secured lenders

---

[2] The relative priorities of Trinity and SVB are governed by the Subordination Agreement entered into by Trinity and SVB on June 19, 2020.

{2471/000/00569632}

6

## III.    THE CHAPTER 11 CASE

### A.    Commencement of the Chapter 11 Case

The Debtors each filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code on October 3, 2023 in order to attempt to reorganize themselves and restructure their debts.

The Debtors' bankruptcy petitions were made necessary due to Molekule, Inc.'s lease of commercial real property in San Francisco, California from 140 Partners, L.P. ("140 Partners"). In February of 2019, Molekule, Inc. entered into a lease agreement (the "San Francisco Lease") with 140 Partners to lease roughly 38,000 square feet of space for Molekule, Inc.'s headquarters at the premises located at 1301 Folsom Street, San Francisco, California 94103, for 84 months, with monthly base rent starting at $209,231.000.  However, due to the changing remote work dynamics accelerated by the COVID-19 pandemic, as well as the effect of San Francisco's homelessness crisis on the leased premises, Molekule, Inc. was forced to abandon is San Francisco location, and neither of the Debtors presently operate from such location.  Following the abandonment of the property relating to the San Francisco Lease, 140 Partners filed a lawsuit against Molekule, Inc. to enforce the San Francisco Lease on September 19, 2023 in the Superior Court of the State of California, County of San Francisco, Case No. CGC-23-609205.

Through the bankruptcy process, Molekule, Inc. rejected the San Francisco Lease via a motion with the Court. As a result, 140 Partners has an Allowed Claim resulting from such lease rejection treated as a General Unsecured Claim subject to the statutory cap set forth in 11 U.S.C. § 502(b)(6).

### B.    Retained Professionals

Through applications filed with the Court, the Debtors intend to retain certain professionals in connection with the Debtors' cases, including Shraiberg Page P.A. as general bankruptcy counsel; the law firm of Travis Law PLLC as Molekule, Inc.'s special counsel for an ongoing arbitration sited in Germany;   the Yocca Law Firm for the arbitration, ongoing litigation against Aura Smart Air, Ltd., and employment issues; the Law Offices of Stacy Grossman for trademark prosecution; the Marbury Law Group for various intellectual property matters; Freshfields Bruckhaus Deringer US LLP to advise the Debtors' board of directors; Schox PLC for patent prosecution.  The Debtors also intend to or have retained Moecker Auctions, Inc. to value the Debtors' personal property; KapilaMukamal, LLP to value the Debtors' business as a going concern; and Grassi Advisors & Accountants to value the Debtors' intellectual property.

The Debtors may seek to employ additional professionals in connection with their cases. Moreover, Section 6.06 the Plan provides that, upon the Effective Date, the Estates shall employ a Plan Administrator, who may thereafter seek to employ additional professionals.

### C.    Debtor in Possession Financing

On the Petition Date, the Debtors filed a motion seeking authorization from the Court to obtain $3,000,000 in post-petition debtor in possession financing (the "DIP Financing"), with such DIP Financing being secured by a super-priority, first-position priming lien on all of the Debtors'

{2471/000/00569632}

assets other than the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment pursuant to 11 U.S.C. § 364(d), and with such DIP Financing being allowed as a super-priority administrative expense pursuant to 11 U.S.C. § 364(c)(1). Such $3,000,000 in DIP Financing was provided proportionately by the DIP Lenders, with BCC serving as the administrative and collateral agent for the DIP Lenders pursuant to the terms set forth in the motion and approved by the Court:

      a. Foundry, 44%;

      b. BCC. an affiliate of Khoury, 24%;

      c. Armistice, 22%; and

      d. SVBC, 10%.

As set forth in Section 3.02 of the Plan, on the Effective Date, the DIP Lenders shall pay to the Reorganized Debtor $5,000,000 less the outstanding principal amount due under the DIP Financing.

**D.      Wages and Critical Vendors**

      Through a motion filed with the Court, the Debtors sought and received the Court's authority to pay the pre-Petition wages, and benefits owed to the Debtors' employees pursuant to 11 U.S.C. §§ 105(a) and 507(a)(4). Through a motion filed with the Court, the Debtors also sought and received the Court's authority to pay the pre-Petition claims of certain vendors (the "Critical Vendors") that are critical to the Debtors' continued, post-Petition operations, with such payments (the "Critical Vendor Payments") not being subject to the avoidance and recovery by any Plan Administrator, estate, debtor in possession, trustee, or committee pursuant to 11 U.S.C. §§ 544, 547, 548, 549, or 550, provided that at least $150,000 is distributed from the Estates to holders of Allowed General Unsecured Claims on the Effective Date of the Plan.

**E.      The Claims Process**

      The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case. The Court establishes a "bar date" – a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution. The Court has set a bar date of December 12, 2023, for claims by non-governmental entities. After the filing of all claims, the debtor evaluates such claims and can raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors. In the Debtors' cases, the Court entered an order that established the deadline for filing proofs of Claims against the Debtors, other than claims of governmental units and Administrative Claims.

      The Debtors have been reviewing, analyzing and resolving Claims on an ongoing basis as part of the claims reconciliation process. Nonetheless, additional claims may be asserted against the Debtors subsequent to the expiration of the Bar Date and the actual ultimate aggregate amount

{2471/000/00569632}

of Allowed Claims may differ significantly from the amounts used for the purposes of Debtors' estimates. Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

**F.      Reserved.**

## IV.    CHAPTER 11 PLAN

**THE FOLLOWING IS A BRIEF SUMMARY OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.  THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN.    CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN CAREFULLY.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS.**

**A.      Plan Overview**

The Debtors believe that confirmation of the Plan provides the best opportunity for maximizing recoveries for the Debtors' creditors and equity interest holders.  Through the Plan, the Debtors will be able to restructure their debt and provide a meaningful distribution to the holders of Allowed Claims, as discussed below.  Further, the Debtors believe, and will demonstrate to the Court, that the Debtors' creditors will receive not less than the amount that they would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

**B.      Substantive Consolidation**

Through the Plan, the Debtors propose to substantively consolidate Molekule, Inc. with Molekule Group.  Since Molekule Group was formed in 2023, Molekule Group and Molekule, Inc. have operated as a consolidated entity with their books consolidated.  Neither Debtor maintains separate books, and neither Debtor separately tracks its due-to payables or due-from receivables.  Since January 2023, the Debtors have been jointly operating the Molekule air purifier business, with sales, revenue, receivables and expenses commingled between the Debtors.

Substantive consolidation is appropriate where there is substantial identity between the entities to be consolidated, and consolidation is necessary to avoid some harm or to realize some benefit to the estate.  There is substantial identity between the Debtors because: (a) Molekule, Inc. is a wholly owned subsidiary of Molekule Group; (b) the Debtors share the same principal address in Palm Beach Gardens, Florida; (c) the Debtors have jointly operated the air purifier business, with sales, revenue, receivables and expenses commingled between the Debtors; (d) the individuals serving on the Debtors' respective boards of directors are identical; (e) as a result of the foregoing, it would be extremely difficult to segregate and ascertain individual assets and liabilities, and there exists commingling of assets and business functions; (f) the Debtors are both jointly and severally liable on, and have substantially all of their assets fully encumbered by, the

Senior Loan Agreement and the Mezzanine Loan Agreement held by SVB and SVBC; and (g) the Debtors are both jointly and severally liable on the Trinity Equipment Lease Documents.

Upon the Effective Date of the Plan, Molekule, Inc. will be substantively consolidated with Molekule Group, including for the following purposes: (a) treating assets of the Debtors as being a single estate of Molekule Group, including Avoidance Actions under chapter 5 of the Code, (b) treating all claims against the Debtors as against the single estate of Molekule Group, and (c) eliminating duplicative claims by the same creditor asserted against more than one estate. Following Confirmation of the Plan, Molekule Group will be vested in all substantively consolidated estate assets and will be the Reorganized Debtor.  All distributions under the Plan shall come from the substantively consolidated estate.  The Reorganized Debtor will file a Notice of Substantive Consolidation with the Court within two business days of the substantive consolidation.

## C.    Unclassified Claims

### i.    Allowed Administrative Claims

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims.  All other holders of Allowed Administrative Claims (with the exception of estate professionals who will be paid 100% of the amount allowed by the Court upon application to the Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Court or agreed to by the holder of such Claim, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order. Allowed Administrative Claims shall be paid from funds generated from the Debtors' operation, cash on hand, and retainers held by professionals.

### ii.    DIP Claim

On the Effective Date, the DIP Lenders shall pay to the Reorganized Debtor cash equal to $5,000,000 less the outstanding principal amount due under the DIP Financing and receive 63% of the equity interests in the Reorganized Debtor, to be distributed to the holders in accordance with the percentages which they funded the DIP Facility, in full satisfaction, settlement, release, extinguishment, and discharge of the DIP Claim.

### iii. Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of the Reorganized Debtor's business on the date of assessment of such Claim.

### iv.    United States Trustee's Fees

Until the Effective Date of a confirmed plan, the debtors shall continue to file the UST Form 11-MOR, Monthly Operating Report and shall timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) (the "Quarterly Fees"). Within two business days of the Effective Date, the reorganized debtors and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Following the Effective Date of the confirmed plan, the reorganized debtors and any other authorized parties who have been charged with administering the confirmed plan shall file the UST Form 11-PCR, Post-confirmation Report, every calendar quarter and shall timely pay the U.S. Trustee Quarterly Fees until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.

## D.    Treatment of Claims and Interests

### 1.    Class 1 – *Allowed SVB Senior Secured Claim* **(Impaired; therefore, entitled to vote to accept or reject the Plan)**

#### (a)    *Definition of Class 1*

Class 1 consists of the senior secured debt in the approximate amount of $4,463,399.92 held by SVB, memorialized by the Senior Loan Agreement and the Senior Joinder, and generally secured by a senior lien on substantially all of the Debtors' personal property, excluding the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment.

#### (b)    *Treatment of Class 1*

On the Effective Date, the Allowed SVB Senior Secured Claim, the Senior Loan Agreement, and all loan documents related thereto, shall be assumed by the Reorganized Debtor, with the existing maturity date of **March 1, 2028** remaining in place, but with the following modifications:

(i) The limit on the SVB credit card debt portion of the Allowed SVB Senior Secured Claim shall be reduced to $500,000 on the Effective Date.  If the outstanding balance on such credit card portion exceeds $500,000 on the Effective Date, the Debtors or the Reorganized Debtor shall pay to SVB such excess amount on or before the Effective Date so that the maximum outstanding balance on the credit card portion does not exceed $500,000;

(iii) The Reorganized Debtor shall make monthly payments of accrued interest as and when due under the Senior Loan Agreement; and

(iii) The principal balance of the Allowed SVB Senior Secured Claim shall be repaid in monthly payments of $75,094.16 each beginning on the Effective Date and continuing on the first day of each calendar month thereafter.  All unpaid principal, together with accrued interest and all other obligations under the Senior Loan Agreement shall be repaid in full on March 1, 2028.

{2471/000/00569632}

11

On or before the Effective Date, the Reorganized Debtor shall execute an amendment to the Senior Loan Agreement memorizing the foregoing modifications, which amendment shall be in a form and substance acceptable to SVB in all respects. All liens securing the Allowed SVB Senior Secured Claim shall remain in place until such time as the Allowed SVB Senior Secured Claim is paid in full.

2.    **Class 2 – *Allowed SVB Mezzanine Secured Claims* (Impaired; therefore, entitled to vote to accept or reject the Plan)**

(a)    *Definition of Class 2*

Class 2 consists of: (i) the junior secured debt in the approximate amount of $15,000,000 held by SVB, memorialized by the Mezzanine Loan Agreement and the Mezzanine Joinder, and generally secured by a junior lien on substantially all of the Debtors' personal property, excluding the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment; and (ii) the junior secured debt in the approximate amount of $15,000,000 held by SVBC, memorialized by the Mezzanine Loan Agreement and the Mezzanine Joinder, and generally secured by a junior lien on substantially all of the Debtors' personal property, excluding the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment

(b)    *Treatment of Class 2*

On the Effective Date, as set forth in Sections 5.02 and 8.02 of the Plan, in full satisfaction, settlement, release, extinguishment and discharge of such claims, each holder of the two Allowed SVB Mezzanine Secured Claims shall receive 18.5% of the new equity interests in the Reorganized Debtor.

3.    **Class 3 – *Allowed Trinity Secured Claim* (Unimpaired; therefore, deemed to accept the Plan and not entitled to vote)**

(a)    *Definition of Class 3*

Class 3 consists of the allowed secured debt held by Trinity in the amount of the Trinity Equipment Lease Obligations, memorialized by the Trinity Equipment Lease Documents and Trinity Joinder, and secured by a junior lien on the general assets of the Debtors, as well as a senior lien on the Trinity Equipment.

(b)    *Treatment of Class 3*

On the Effective Date, the holder of the Allowed Trinity Secured Claim shall receive, at the Reorganized Debtor's option and in its sole discretion, the following treatment: (i) payment in full, in cash in complete satisfaction, settlement, release, extinguishment and discharge of such claim; **_or_** (ii) assumption of the Allowed Trinity Secured Claim and the Trinity Equipment Lease Documents by the Reorganized Debtor. If the Allowed Trinity Secured Claim is assumed by the Reorganized Debtor, the parties have agreed that the monthly rent factor to be used for calculating Basic Rent on the Allowed Trinity Secured Claim shall accrue at a rate equal to 0.030136 , but no payment of Rent shall be due until maturity, when the full balance (including all accrued and

{2471/000/00569632}

unpaid prepetition and postpetition Rent, the Final Payment, and other unpaid obligations under the Trinity Equipment Lease Documents) of the Allowed Trinity Secured Claim shall be paid, with such maturity occurring upon the earliest of: (I) December 31, 2024, (II) the consummation of the sale of substantially all of the Trinity Equipment, or (II) the consummation of any sale of substantially all of the assets or equity interests in the Reorganized Debtor that occurs after the Effective Date.

All liens securing the Allowed Trinity Secured Claim shall remain in place until such time as the Allowed Trinity Secured Claim is paid in full, in cash.

**4.      Class 4 – *Allowed Warehouse Secured Claim* (Unimpaired; therefore, deemed to have accepted the Plan and not entitled to vote)**

    *(a)      Definition of Class 4*

Class 4 consists of the secured debt in the approximate amount of $242,067.07 owing to ALOM Technologies Corp., the landlord of the warehouse facilities utilized by the Debtor in Fremont, California and Indianapolis, Indiana, and secured by a lien on the Debtor's assets stored therein.

    *(b)      Treatment of Class 4*

To the extent that the holder of the Allowed Warehouse Secured Claim has not already been paid in full via Critical Vendor Payment or paid as otherwise authorized by the Court, then, in full satisfaction, settlement, release, extinguishment and discharge of such claim, the holder of the Allowed Warehouse Secured Claim receive payment in full in cash by the Reorganized Debtor on the Effective Date.

**5.      Class 5 – *Allowed Unsecured Priority Wage Claims* (Unimpaired; therefore, deemed to have accepted the Plan and not entitled to vote)**

    *(c)      Definition of Class 4*

Class 5 consists of the unsecured claims of the Debtors' current or former employees and contractors to the extent such claims are entitled to priority status pursuant to 11 U.S.C. § 507(a)(4).

    *(d)      Treatment of Class 5*

On the Effective Date, and except to the extent that a holder of an allowed Class 5 Claim has been paid prior to the Effective Date or agrees to different treatment, in full satisfaction, settlement, release, extinguishment and discharge of such claims, each holder of an Allowed Unsecured Priority Wage Claim shall receive payment in full in cash by the Reorganized Debtor. To the extent any person holds an unsecured claim that exceeds the statutory cap set forth in 11 U.S.C. § 507(a)(4), such claim shall be treated as a General Unsecured Claim in Class 8 of the Plan.

6.    **Class 6 –** ***Allowed Unsecured Priority Benefit Plan Contribution Claims*** **(Unimpaired; therefore, deemed to have accepted the Plan and not entitled to vote)**

(a)    *Definition of Class 6*

Class 6 consists of the unsecured claims for contributions to the Debtors' employee benefit plans to the extent such claims are entitled to priority status pursuant to 11 U.S.C. § 507(a)(5).

(b)    *Treatment of Class 6*

On the Effective Date, and except to the extent that a holder of an allowed Class 6 Claim has been paid prior to the Effective Date or agrees to different treatment, in full satisfaction, settlement, release, extinguishment and discharge of such claims, each holder of an Allowed Unsecured Priority Benefit Plan Contribution Claim shall receive payment in full in cash by the Reorganized Debtor. To the extent any person holds an unsecured claim that exceeds the statutory cap set forth in 11 U.S.C. § 507(a)(5), such claim shall be treated as a General Unsecured Claim in Class 8 of the Plan.

7.    **Class 7 –** ***Allowed Unsecured Priority Consumer Deposit Claims*** **(Unimpaired; therefore, deemed to have accepted the Plan and not entitled to vote)**

(a)    *Definition of Class 7*

Class 7 consists of the unsecured claims held by individuals for deposits to the Debtors to the extend such claims are entitled to priority status pursuant to 11 U.S.C. § 507(a)(7). The Debtors are unaware of any such claims.

(b)    *Treatment of Class 7*

On the Effective Date, and except to the extent that a holder of an allowed Class 7 Claim has been paid prior to the Effective Date or agrees to different treatment, in full satisfaction, settlement, release, extinguishment and discharge of such claims, each holder of an Allowed Unsecured Priority Consumer Deposit Claim shall receive payment in full in cash by the Reorganized Debtor. To the extent any person holds an unsecured claim that exceeds the statutory cap set forth in 11 U.S.C. § 507(a)(7), such claim shall be treated as a General Unsecured Claim in Class 8 of the Plan.

8.    **Class 8 –** ***Allowed General Unsecured Claims*** **(Impaired; therefore, entitled to vote to accept or reject the Plan)**

(a)    *Definition of Class 8*

Class 8 consists of the general unsecured claims creditors, including all allowed claims arising from the Debtors' rejection of executory contracts and unexpired leases.

        *(b)      Treatment of Class 8*

In full satisfaction, settlement, release, extinguishment, and discharge of such claims, (i) on the Effective Date, each holder of an Allowed General Unsecured Claim shall receive from the Reorganized Debtor a one-time Pro Rata distribution from a total of $150,000; and (ii) a Pro Rata distribution of all net proceeds received or obtained by the Plan Administrator resulting from any demand, pursuit, award, or settlement of any Avoidance Action that is not an Avoidance Action to avoid or recover any Critical Vendor Payment as set forth in Section 6.06 of the Plan.

**9.      Class 9 – *Allowed Intercompany Claims* (Impaired and receiving no distribution so deemed to reject and not entitled to vote on the Plan)**

        *(a)      Definition of Class 9*

Class 9 consists of the claims by either Debtor against the other Debtor.

        *(b)      Treatment of Class 9*

On the Effective Date, all Allowed Intercompany Claims shall be cancelled and extinguished, and the holders of such claims shall receive no distribution under the Plan on account of such claims.

**10.     Class 10 – *Allowed Equity Interests Claims* (Impaired and receiving no distribution so deemed to reject and not entitled to vote on the Plan)**

        *(a)      Definition of Class 10*

Class 10 consists of Allowed Equity Interests.  Equity Interests consist of any share of preferred stock, common stock or other instrument evidencing an ownership interest in the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

        *(b)      Treatment of Class 10*

On the Effective Date, all Allowed Equity Interests in the Debtors shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and the holders of Allowed Equity Interests shall receive no distribution.

### E.      Future Management and Related Compensation

As set forth in Section 8.02.1 of the Plan, following the Effective Date, the Reorganized Debtor's officers and directors, will be as follows:

{2471/000/00569632}

1. Jason DiBona, Chief Executive Officer;

2. Ryan Tyler, Chief Financial Officer;

3. Ryan M. Patch, Secretary and Chief Legal Officer;

4. David Helfet, M.D., Director;

5. Michael Senft, Director;

6. Thomas P. McCaffrey, Director;

7. Timothy J. Scannell, Director;

8. Stephen M. Ward, Director;

9. Amin J. Khoury, Director; and

10. Brad Feld, Director.

Such directors will not initially receive any compensation following the Effective Date.  The Reorganized Debtor's three officers will initially receive annual compensation as follows:

i. Jason DiBona, Chief Executive Officer:

Salary: $350,000,
Car Allowance: $7,800;

ii. Ryan Tyler, Chief Financial Officer;

Salary: $300,000,
Car Allowance: $7,800;

iii. Ryan M. Patch, Secretary and Chief Legal Officer;

Salary: $300,000,
Car Allowance: $7,800.

**F.    Distributions Under the Plan**

(a)    Subject to Rule 9010, and except as otherwise provided in Sections 6.04 and 6.06 of the Plan, all distributions under the Plan shall be made by the Reorganized Debtor to the holder of each Allowed Claim in the manner provided for in the Plan, at the address of such holder as listed on the schedules and/or Proof of Claim as of the Confirmation Date unless the Debtors or Reorganized Debtor has been notified in writing of a change of address, including by the filing of

{2471/000/00569632}

a proof of Claim by such holder that provides an address different from the address reflected on the schedules.

(b)      Except as otherwise provided for in the Plan and Confirmation Order, any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)      Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)      When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 6.03(f) of the Plan.

(e)      In the event that any distribution to any holder is returnable as undeliverable, the Debtors shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Debtors have determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided that any distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date or the distribution date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(f)      Unless otherwise provided herein, all initial distributions and deliveries shall be made on the Effective Date.

(g)      At the close of business on the date of the Confirmation Hearing, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtors shall have no obligation to recognize any transfer of any Claims occurring after the date of the Confirmation Hearing; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the date of the Confirmation Hearing and prior to the Effective Date, if applicable.  The Debtors shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the date of the Confirmation Hearing.

## G.      Procedures for Allowance or Disallowance of Disputed Claims

Any and all objections to any claim must be filed by the deadline set by the Court (the "Objection Deadline"), or with respect to rejection claims, within five (5) days after the filing of any rejection claim (the "Objection to Rejection Claims Deadline").  In the event that the Debtors or Reorganized Debtor settle any claim objection, the Debtors or Reorganized Debtor may seek approval by submitting an Agreed Order in a form acceptable to the Debtors and the holder of the Disputed Claim.  In the event that the Debtors and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtors or Reorganized Debtor will set the

contested matter for hearing before the Bankruptcy Court and will provide all interested parties with notice of the date set.

If any distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder.  A distribution of funds is unclaimed, if, without limitation, the holder of an Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the schedules, the amended schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtors or the Reorganized Debtor shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date. All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court.  Unless otherwise ordered by the Court, the Debtors, the Reorganized Debtor, or the Plan Administrator shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one year after the Effective Date or such later date as may be approved by the Court.  The Debtors or the Reorganized Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business.   All parties shall bear their own costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

Subject to applicable law, from and after the Effective Date, the Debtors and Plan Administrator will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan.  Any and all objections to any claim must be filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline.

An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtors, at any time on or before the Claim Objection Deadline. The failure by Debtors to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtors' right to object to, or re-examine, any such Claim in whole or in part.

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

All Claims held by Persons against whom the Debtors, the Reorganized Debtor, or Plan Administrator have commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are

{2471/000/00569632}

18

deemed disallowed pursuant Section 6.05(c) of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estates from such party have been paid.

## H.    Distributions Withheld for Disputed Claims

(a) On the initial distribution date and each subsequent distribution date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtors or the Court in accordance with the Plan (the "Disputed Claims Reserve").

(b) Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Reorganized Debtor for the benefit of the potential recipients of such Cash and shall not constitute property of the Reorganized Debtor. In the event the Court subsequently disallows a Disputed Claim, Cash and any other consideration in the Disputed Claims Reserve on account of such disallowed Disputed Claim, and any other consideration actually distributed on account of such Disputed Claim, shall vest in the Reorganized Debtor.

(c) The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such Distributions shall be made in accordance with the Plan.

(d) To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Reorganized Debtor.

(e) Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtor on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtor.

## I.    Disbursing Agent and Plan Administrator

Following the Effective Date, the Reorganized Debtor shall employ a Plan Administrator, with the Reorganized Debtor providing a $50,000 fee and expense retainer for such employment

Notwithstanding Section 8.03 of the Plan, the Plan Administrator shall be vested, for the benefit of holders of Allowed Class 8 Claims, with all Avoidance Actions that are not an Avoidance Action to avoid or recover any Critical Vendor Payment.  The Plan Administrator may employ one or more professionals subject to Court approval, and, notwithstanding any contrary provision of Federal Rule of Bankruptcy Procedure 2002(a)(3), may provide notice of hearings to approve settlements or compromises via electronic CM/ECF service upon the Debtors' twenty largest unsecured creditors without further notice.

{2471/000/00569632}

The Plan Administrator will make all distributions required to be distributed to general unsecured creditors under the applicable provisions of the Plan and will serve without bond.

The Plan Administrator may apply to the Court for approval of reasonable compensation and reimbursement of reasonable and necessary costs and expenses up to the $50,000 fee and expense retainer, with any fees and expenses above such amount payable from the gross proceeds of any Avoidance Action but not otherwise payable by the Estates, the Debtors, or the Reorganized Debtor.

## J.      Executory Contracts and Unexpired Leases

The Code grants the Debtors the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtors and any Person shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease: i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date, or iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty-one (21) days prior to the Confirmation Hearing; provided, however, that the Debtors or Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected. The Debtors or Reorganized Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtors or the Reorganized Debtor that such document is an executory contract or an unexpired lease, or that the Debtors or the Reorganized Debtor have any liability thereunder.

### 1.      Schedules of Assumed Executory Contracts and Unexpired Leases; Inclusiveness

Each executory contract and unexpired lease listed or to be listed on the Assumption List that relates to the use or occupancy of real property shall be deemed to include: i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption List, and ii) all executory contracts or unexpired leases appurtenant to the premises listed on the Assumption List, including, without limitation, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other

{2471/000/00569632}

20

interests in real estate or rights in rem relating to such premises, unless any of the foregoing agreements previously have been assumed.

### 2.    Insurance Policies

The Debtors' insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan and are hereby *assumed* pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.  Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan.  Nothing contained in the Plan shall constitute or be deemed a waiver or release of any action that the Debtors may hold against any entity, including, without limitation, the insurers under any of the Debtors' policies of insurance.

### 3.    Warranties

All existing executory warranty contracts of the Debtors are hereby *assumed* pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

### 4.    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute: i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article VII of the Plan, and ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

### a.    Cure of Defaults

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Assumption List.  To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount listed in the Assumption List, such party must file a notice of dispute with the Court and serve such notice on the Debtors by no later than five days prior to the Confirmation Hearing.  Except as may otherwise be agreed to by the parties or provided herein, within ninety days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code.  Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety days of the entry of a Final Order determining the amount, if any, of the Debtors' or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.  If there are any objections filed, the Court shall hold a hearing.  In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtors, the Reorganized Debtor may elect to reject the contract or unexpired lease and not pay such greater cure amount.

{2471/000/00569632}

b.      **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtors or Reorganized Debtor or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of: i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, ii) notice of entry of the Confirmation Order, and iii) notice of an amendment to the Assumption List.  Any Claim not filed within such time will be forever barred from assertion against the Debtors, their Estate, the Reorganized Debtor and their respective property.  Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plan.

c.      **Indemnification Obligations**

For purposes of the Plan, the obligations of the Debtors to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtors' certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Commencement Date.

The Debtors currently hold $10,000,000 in insurance coverage for acts or omissions by their directors and officers (the "D&O Insurance").  However, this coverage expires on November 23, 2023.  Prepetition, the Debtors purchased an extension of its D&O coverage, as well as a tail; however, due to the expense associated with purchasing a policy on the eve of a bankruptcy filing, the amount of coverage has been reduced to $5,000,000.  The Debtors are not aware of any claims against their directors, officers, or employees which would trigger the Debtors' indemnification obligations.

d.      **Compensation and Benefit Programs**

Except as provided in the Plan and Assumption List, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims or Interests under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its directors, officers, and employees who served as directors, officers and employees, respectively, after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby assumed pursuant to sections 365(a) and 1123(b)(2) of the Code; *provided, however*, that the Reorganized Debtor reserves the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

**K.      Corporate Existence and Equity**

Except as otherwise provided in the Plan, Molekule Group, Inc., as the Reorganized Debtor, shall continue to exist after the Effective Date, with all powers of a corporation, pursuant to the applicable law in the jurisdiction in which the Reorganized Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended or superseded by the Plan or otherwise, and to the extent such documents are amended or superseded, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.  Following the Effective Date, the Reorganized Debtor may operate its business free of any restrictions imposed by the Code, the Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order.

In exchange for, and on account of, the Effective Date Payment and the DIP Claim, the DIP Lender shall receive 63% of the new equity interests in the Reorganized Debtor as follows:

(i) Foundry, 27.72%;

(ii) BCC, 15.12%;

(iii) Armistice, 13.86%; and

(iv) SVBC, 6.3%.

As contemplated by Section 5.02, in exchange for and on account of the Allowed SVB Mezzanine Secured Claims, SVB and SVBC (or their assigns) shall each receive 18.5% of the new equity interests in the Reorganized Debtor The terms and conditions of the new equity in the Reorganized Debtor, including the form and substance of any and all corporate formation and governance documents, shall be acceptable to the new equity interest holders named herein (the "New Equity Holders") in their sole, absolute, and exclusive discretion.

After the Effective Date, and without further approval of the Court, but subject to the prior written consent of SVB, which consent may be granted, withheld, or conditioned in SVB's sole discretion, the Reorganized Debtor may transfer all of its assets to a new entity ("NewCo"), owned by the New Equity Holders in the same proportions described in this Section, so long as NewCo assumes all outstanding obligations of the Reorganized Debtor.

**L.      The Reorganized Debtor and Vesting of Assets**

Except as otherwise expressly provided in the Plan and the Confirmation Order, on the Effective Date, the Reorganized Debtor shall be vested with all of the property of the Estates, free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to those of holders of Claims and holders of Equity Interests.  The Reorganized Debtor shall assume all of the Debtors' rights, obligations and liabilities under the Plan.  Pursuant to section 1141 of the Code, the property of the Estates shall be transferred to and vest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and Interests of holders of Claims

{2471/000/00569632}

23

and Equity Interests, including any party asserting any claims against or interests in the Debtors, except as otherwise expressly provided in the Plan or the Confirmation Order.

**M.      Corporate Action**

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors or members of the Debtors or the Reorganized Debtor or its successors in interest under the Plan, including, without limitation, the vesting of the property of the Estates into Molekule Group, Inc. as Reorganized Debtor,  the authorization to issue or cause to be issued the new membership interests and documents relating thereto, the adoption of the Reorganized Debtor's articles of incorporation, the adoption of the Reorganized Debtor's bylaws and other governance documents, and the election or appointment, as the case may be, of directors or officers of the Reorganized Debtor pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to applicable general business organization law, without any requirement of further action by the stockholders or directors of the Debtors or Reorganized Debtor.

**N.      Discharge, Exculpation, Injunction, Release and Limitation of Liability**

**1.      Discharge of Debtors and Reorganized Debtor**

**Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever and whenever arising, including any interest accrued on such Claims from and after the applicable petition date, against the Debtors, their Estates, the Reorganized Debtor, any of the assets or properties under the Plan.  Except as otherwise provided in the Plan, i) on the Effective Date, all such Claims against the Debtors and Equity Interests in the Debtors shall be satisfied, discharged and released in full, and ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date  , whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.**

**2.      Injunction**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtors, or Equity Interest in the Debtors, are permanently enjoined, on and after the Effective Date, from: i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtor, with respect to any such Claim or Equity Interest, ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors or the Reorganized Debtor on account of any such Claim or Equity Interest, iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or the Reorganized Debtor, or against the property or interests in property of the Debtors or the Reorganized Debtor, on account of any such Claim or Equity Interest, and iv) asserting any right of setoff, subrogation or recoupment of any kind against**

{2471/000/00569632}

**any obligation from the Debtors or the Reorganized Debtor, or against the property or interests in property of the Debtors or the Reorganized Debtor, on account of any such Claim or Equity Interest.  The injunctions described herein shall extend to the successors of the Debtors, including, without limitation, the Reorganized Debtor, and their respective properties and interests in property.**

3.      **Release by Estate of Officers, Managers, and Directors**

**Notwithstanding anything contained in the Plan, pursuant to section 1123(b) Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each of the Debtors' current and former officers, managers, and directors (each, an "OMD Released Party"), is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtor, and their respective Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any claim, Action, Avoidance Action, or cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, Actions, Avoidance Actions, or causes of action including any derivative claims, asserted or assertible on behalf of any of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtor, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against or Interest in a Debtor or any other Entity, (collectively, the "Debtor Releases"). Notwithstanding anything herein to the contrary, the Debtor Releases will not (i) release post-Effective Date obligations of any entity under the Plan or any other document, instrument, or agreement executed to implement the Plan (unless expressly cancelled by the Plan), or (ii) affect such releasing parties' rights that remain in effect from and after the Effective Date to enforce the Plan or as otherwise provided in any order of the Bankruptcy Court.**

As consideration for the Debtor Releases, the Debtors' directors will continue to serve on the board of the Reorganized Debtor. Historically, the Debtors' directors received rights to restricted stock as compensation. While those rights vested, they never settled, and through the Plan, all equity interests will be cancelled. Accordingly, the directors essentially worked for free throughout the Debtors' startup years. After confirmation, the directors identified above will continue to serve without compensation.

For the avoidance of doubt, the Debtor Releases only release claims held by the Debtors and do not release any claims held by creditors, shareholders, or other third parties directly against an OMD Released Party.  The Debtors are not aware of any claims against an OMD Released Party.

4.      **Injunction Against Interference with the Plan**

**Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims, Equity Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any**

actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

### 5. Exculpation

*Subject to the occurrence of the Effective Date, neither the Debtors, the Reorganized Debtor, nor any parties to the Restructuring Support Agreement assumed by the Debtors pursuant to the Court's authorization thereof, or any of their respective professionals, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the cases of the Debtors, the negotiation, execution, or performance of the Restructuring Support Agreement and the transactions contemplated thereby, the negotiation, execution, or performance of the DIP Financing,, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.*

### 6. Votes Solicited in Good Faith

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

### 7. Term of Bankruptcy Injunction or Stay

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## O. Retention of Jurisdiction

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)      to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b)      to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)      to hear and determine all Actions, including, without limitation, Actions commenced by the Debtors, the Reorganized Debtor, or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)      to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)      to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)      to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)      to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Assumption List, or any order of the Court, including, without limitation, the Confirmation Order;

(i)      to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)      to recover all Assets of the Debtors and Property of their Estate, wherever located;

(l)      to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)      to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtors for all taxable periods through

the Effective Date for all taxable periods of the Debtors through the liquidation and dissolution of such entity);

(p)    to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)    to hear any other matter not inconsistent with the Code; and

(r)    to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

**P.    Reserved**

**Q.    Reserved**

## V.    <u>CONFIRMATION OF THE PLAN</u>

**A.    Solicitation of Votes**

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in Classes 1, 2, 3, and 8 are impaired and entitled to vote on the Plan.  Claims in Classes  4, 5, 6, and 7 are unimpaired and the holders of such claims are conclusively presumed to have accepted the Plan and the solicitation of acceptances with respect to such Class therefore is not required under section 1126(f) of the Bankruptcy Code.  Holders of Claims and Interests in Classes 9 and 10 will not receive any distribution and are deemed not to have accepted the Plan under section 1126(g).

An Impaired Class of Claims will have accepted the Plan if: i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.  An Impaired Class of Interest will have accepted the Plan if the holders of at least two-thirds in amount of the Allowed Interests actually voting in the Class have voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.  A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.

**B.    Confirmation Hearing**

The Bankruptcy Court will schedule the Confirmation Hearing to consider approval of this Disclosure Statement and Confirmation of the Plan before the Honorable Erik P. Kimball, Judge for the United States Bankruptcy Court for the Southern District of Florida, located at the United

States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida, 33401. The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.  The Bankruptcy Court will set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the Confirmation of the Plan. Any objection to Confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim.  Any such objection must be filed with the Court by the deadline set by the Court.

**C.     Confirmation Standards**

For a chapter 11 plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the Bankruptcy Code.  Section 1129 of the Bankruptcy Code also imposes requirements that with respect to each class of claims or interests, such class has accepted the plan or such class is not impaired under the plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims or interests which is impaired under the plan. The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met.  The Debtors believe that the Plan satisfies all of the requirements for confirmation for the following reasons:

## VI.     FUNDING AND FEASIBILITY OF THE PLAN

**A.     Funding of the Plan**

Funds to be used to make the payments required on the Effective Date under the Plan shall derive from the Debtors' cash on hand, the operation of the Reorganized Debtor's business in the ordinary course prior to the Effective Date, and the payment received from the DIP Lenders.  The Plan Administrator will receive $50,000 from the Debtors on the Effective Date, and any payments the Plan Administrator makes will come from that $50,000 or the pursuit and recovery of Avoidance Actions.

**B.     Risks to Creditors**

The Debtors do not anticipate that there are any significant federal tax consequences the Plan would have on the Debtors, or their Creditors.  As stated above, the Disclosure Statement will not be construed to be advice on the tax, securities or other legal effects of the Plan.  Each Creditor should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby

**C.     Best Interests Test and Liquidation Analysis**

With respect to each impaired Class of Claims or Equity Interests, Confirmation of the Plan requires that each holder of an Allowed Claim or Equity Interest either i) accept the Plan, or ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.  To determine what holders of Claims or Equity Interests of each

{2471/000/00569632}

impaired Class would receive if the Debtors were liquidated under Chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets in the context of a Chapter 7 liquidation case and the assets were liquidated by a trustee in bankruptcy. The cash amount that would be available for satisfaction of Claims and Interests would consist of the proceeds resulting from the disposition of the assets of the Debtors, augmented by cash held by the Debtors at the time of the commencement of the liquidation case.  Such amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative expenses and priority claims that might result from the termination of the Debtors' business and the use of chapter 7 for the purposes of liquidation.

The Debtors' cost of liquidation under Chapter 7 would include the fees payable to the Chapter 7 trustee, as well as those fees that might be payable to other professionals that such a trustee might engage. The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 case, including any unpaid expenses incurred by the Debtors during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims.

To determine if the Plan is in the best interests of each impaired Class, the present value of the distributions from the proceeds of a liquidation of the Debtors' unencumbered assets, after subtracting the amounts attributable to the foregoing Claims, are then compared with the value of the property offered to such Classes of Claims and Interests under the Plan.

After considering the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 case, including i) the increased costs and expenses of a liquidation under Chapter 7, ii) the erosion in value of assets in a Chapter 7 case in the context of the expeditious liquidation required under Chapter 7 and the "forced sale" environment that would prevail, and iii) the increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Case, the Debtors have determined that confirmation of the Plan will provide each holder of an Allowed Claim and Interest not less than such holder would receive pursuant to liquidation of the Debtors under Chapter 7.  The Debtors' Liquidation Analysis is attached hereto as **EXHIBIT B**.  The information set forth in Exhibit B provides a summary of the liquidation values of the Debtors' assets, assuming a Chapter 7 liquidation in which a trustee appointed by the Court would liquidate the Debtors' assets. Reference should be made to the Liquidation Analysis for a complete discussion.  The Liquidation Analysis was prepared by the Debtors.

Underlying the Liquidation Analysis is a number of estimates and assumptions that, although developed and considered reasonable by the management, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management.  The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change.  Accordingly, the values reflected might not be realized if the Debtors were, in fact, to undergo such a liquidation.  The Debtors have used the best estimation to provide the information set forth in the Liquidation Analysis.

The Debtors have retained experts to provide an independent analysis. While the valuations may change, the Debtors believe that under no circumstances will the liquidation value of the Debtors' assets exceed the secured claims against those assets.

When the Plan is compared to the Liquidation Analysis, the Debtors believe there is slight risk to the creditors, but that Creditors will still receive more through the Plan than through liquidation of the Debtors in chapter 7.

## D.      Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires a debtor to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization. For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed their ability to meet their financial obligations as contemplated thereunder.

The Debtors have prepared projection, through the end of 2028, attached hereto as **EXHIBIT C** that shows that the Reorganized Debtor will be able to make all payments required to be made under the Plan. Accordingly, the Debtors assert that they are able to perform all of their obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.


## VII.    ALTERNATIVES TO THE PLAN

Although this Disclosure Statement is intended to provide information to assist a Claim or Interest holder in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful. If the Plan is not confirmed and consummated, the alternatives to the Plan include i) liquidation of the Debtors under chapter 7 of the Bankruptcy Code; ii) an alternative plan of reorganization; or iii) dismissal of the Chapter 11 Case leaving creditors and interest holders to pursue available non-bankruptcy remedies. If the Court does not confirm the Plan, the Debtors will default on the DIP Financing, and the DIP Lenders may foreclose their priming lien on all of the Debtors assets.

### 1.      Liquidation Under Chapter 7

If no plan is confirmed, the Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be selected to liquidate the Debtors' assets for distribution in accordance with the priorities established by chapter 7. The Debtors believe that liquidation under chapter 7 might result in smaller distributions being made to Creditors and holders of Allowed Equity Interests than those provided for in the Plan because i) the Debtors' assets would have to be sold or otherwise disposed of in a forced sale situation over a short period of time, ii) additional administrative expenses would be involved in the appointment of a trustee, and iii) additional expenses and claims, some of which would be entitled to priority, would be generated during the liquidation.

**2.**     **Alternative Plan of Reorganization**

If the Plan is not confirmed, the Debtors (or if the Debtors' exclusive period in which to file a plan of reorganization has expired, any other party in interest) may attempt to formulate an alternative plan.  Such a plan might involve either a reorganization and continuation of the Debtors' businesses or an orderly liquidation of their assets.  If the Plan is not confirmed, the Debtors will default under the RSA, and the Debtors' secured lenders will have no obligation to accept any alternative chapter 11 plan.

**3.**     **Dismissal of the Chapter 11 Case**

If the Chapter 11 Cases are dismissed, creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against Debtors.  However, in that event, creditors would be faced with the costs and difficulties of attempting to collect claims from either a non-operating entity or an entity in foreclosure from its secured creditor.

## <u>CONCLUSION</u>

For all the reasons set forth herein, the Debtors believe that Confirmation and consummation of the Plan is preferable to all other alternatives.  The Plan proposes to provide a meaning distribution to holders of all Allowed Claims.  Consequently, the Debtors urge all eligible holders of Impaired Claims and Interests to vote to **accept** the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Court.

Molekule Group, Inc.

By: _____
          Ryan M. Patch, Chief Legal Officer


Molekule, Inc.

By: _____
          Ryan M. Patch, Chief Legal Officer

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically served on those parties as listed on the Court's Case Management / Electronic Case Filing system on October 30, 2023.

Respectfully submitted,

Bradley S. Shraiberg
Eric Pendergraft
SHRAIBERG PAGE P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: bss@slp.law
Email: ependergraft@slp.law


By: _/s/ Bradley S. Shraiberg_____
    Bradley S. Shraiberg
    Florida Bar. No. 121622
    Eric Pendergraft
    Florida Bar No. 91927

**<u>EXHIBIT A</u>**

**Joint Plan of Reorganization**

**[*See* ECF No. 147]**

**<u>EXHIBIT B</u>**

**Liquidation Analysis**

**Molekule Group, Inc. and Molekule, Inc. - Liquidation Analysis as of October 3, 2023**

| Assets | Liquidation Value | Notes |
|---|---|---|
| Cash on Hand/Deposit Accounts | $5,751,421.13 | Approximate, and including $5,000,000 in anticipated debtor in possession financing from DIP Lender |
| Deposits/Prepayments | $775,580.70 | Approximate |
| Accounts Receivable | $1,948,312.94 | Approximate |
| Inventory - Raw Materials | $196,688.87 | 10% of Book Value |
| Inventory - Work in Progress | $1,023,873.26 | 10% of Book Value |
| Inventory - Finished Goods | $930,948.20 | 10% of Book Value |
| Office Furniture | $30,494.65 | 10% of Depreciated Book Value |
| Office Fixtures/Leasehold Improvements (San Francisco) | $0.00 | The Debtors ascribe no value to such items located at the Debtors' former headquarters in San Francisco because such items are no longer property of the Debtors' Estates following the abandonment of such premises and the landlord's litigation to enforce the lease. |
| Office Electronics | $8,982.43 | 10% of Depreciated Book Value |
| Computer Software | $0.00 | The Debtors ascribe no value to such licenses office software rights. |
| Non-Trinity Leased Equipment | $0.00 | The Debtors ascribe no value to such leases. |
| Intellectual Property and Other Intangibles | $2,698,000.00 | 10% of Book Value |
| Trinity Equipment German Arbitration | $1,000,000.00 | Amount of Demand |
| Trinity Equipment | $2,228,259.19 | |
| | | |
| **Total Assets** | **$16,592,561.37** | |

| Senior Liabilities | Principal Amount | Notes |
|---|---|---|
| DIP Lender | $5,000,000 | |
| Silicon Valley Bank Senior Secured Claim | $5,300,000.00 | Approximate Petition Date Amount |
| Silicon Valley Bank and Silicon Valley Bank Secured Mezzanine Claims | $30,000,000.00 | Approximate Petition Date Amount |
| Trinity Secured Claim | $2,228,259.19 | Approximate Petition Date Amount |
| | | |
| **Senior Liabilities** | **$37,528,259.19** | |
| | | |
| **Funds Available for Unsecured Creditors** | **$0.00** | |
| | | |
| Note: The Debtors intend to hire one or more appraisers to ascertain: (a) the going concern value of the Debtors; (b) value of the Debtors' tangible assets; and (c) the value of the Debtors' intellectual property. | | |

**<u>EXHIBIT C</u>**

**Projection**

**MOLEKULE SUMMARY P&L**
*(All figures in $000s USD, unless otherwise stated)*

| | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 |
|---|---|---|---|---|---|---|---|
| Purifier Gross Revenue | $25,228 | $20,481 | $22,458 | $28,073 | $33,688 | $40,425 | $48,510 |
| Filters Gross Revenue | $27,544 | $28,628 | $29,655 | $37,068 | $42,629 | $49,023 | $56,376 |
| **Total Gross Revenue** | **$52,772** | **$49,109** | **$52,113** | **$65,141** | **$76,316** | **$89,448** | **$104,887** |
| | | | | | | | |
| Returns & Discounts | **$4,744** | **$6,052** | **$6,413** | **$8,016** | **$9,365** | **$10,941** | **$12,783** |
| | | | | | | | |
| Purifier Net Revenue | $20,485 | $14,697 | $16,753 | $20,941 | $25,129 | $30,155 | $36,186 |
| Filters Net Revenue | $27,544 | $28,359 | $28,948 | $36,185 | $41,613 | $47,855 | $55,033 |
| **Net Revenue** | **$48,028** | **$43,057** | **$45,701** | **$57,126** | **$66,742** | **$78,009** | **$91,218** |
| *% growth* | | | | *25.0%* | *16.8%* | *16.9%* | *16.9%* |
| | | | | | | | |
| Cost of Revenue | **$32,448** | **$25,196** | **$21,719** | **$26,699** | **$30,660** | **$35,203** | **$40,413** |
| **Gross Profit** | **$15,581** | **$17,860** | **$23,982** | **$30,427** | **$36,082** | **$42,806** | **$50,805** |
| *% GM* | *32.4%* | *41.5%* | *52.5%* | *53.3%* | *54.1%* | *54.9%* | *55.7%* |
| | | | | | | | |
| CAC | **$8,951** | **$7,400** | **$4,890** | **$5,624** | **$6,467** | **$7,437** | **$8,553** |
| **Contribution Margin** | **$6,630** | **$10,461** | **$19,092** | **$24,803** | **$29,615** | **$35,369** | **$42,252** |
| *% CM* | *13.8%* | *24.3%* | *41.8%* | *43.4%* | *44.4%* | *45.3%* | *46.3%* |
| | | | | | | | |
| Personnel Costs | $13,326 | $15,970 | $14,909 | $15,106 | $15,308 | $15,516 | $15,731 |
| Stock-based Compensation | $1,449 | $8,361 | $0 | $0 | $0 | $0 | $0 |
| G&A, Research and Development | $11,012 | $10,971 | $8,374 | $8,625 | $8,884 | $9,151 | $9,425 |
| Consultants | $3,520 | $2,679 | $1,011 | $1,011 | $1,011 | $1,011 | $1,011 |
| Professional Fees | $7,287 | $8,822 | $2,448 | $2,256 | $1,969 | $1,572 | $1,045 |
| Sales, Marketing, and Ad Support | $438 | $920 | $796 | $835 | $877 | $921 | $967 |
| Depreciation & Amortization | $2,388 | $1,988 | $1,869 | $1,869 | $1,869 | $1,869 | $1,869 |
| **Total Operating Expenses** | **$39,421** | **$49,711** | **$29,407** | **$29,703** | **$29,919** | **$30,040** | **$30,049** |
| | | | | | | | |
| **Operating Income (Loss)** | **($32,791)** | **($39,251)** | **($10,316)** | **($4,899)** | **($304)** | **$5,328** | **$12,203** |
| *% Operating Margin* | *(68.3%)* | *(91.2%)* | *(22.6%)* | *(8.6%)* | *(0.5%)* | *6.8%* | *13.4%* |
| | | | | | | | |
| Other Income | $34,841 | ($8,392) | $509 | $509 | $509 | $509 | $509 |
| Interest Expense | ($4,067) | ($3,476) | ($81) | ($172) | ($172) | ($172) | ($172) |
| Other Expense | $465 | ($121) | $0 | $0 | $0 | $0 | $0 |
| **Total Other Income / (Expense)** | $31,239 | ($11,989) | $428 | $337 | $337 | $337 | $337 |
| | | | | | | | |
| Income Taxes | $326 | $10,760 | $2,076 | $958 | ($7) | ($1,190) | ($2,633) |
| | | | | | | | |
| **Net Income (Loss)** | **($1,226)** | **($40,480)** | **($7,811)** | **($3,604)** | **$26** | **$4,476** | **$9,907** |
| *% Margin* | *(2.6%)* | *(94.0%)* | *(17.1%)* | *(6.3%)* | *0.0%* | *5.7%* | *10.9%* |
| | | | | | | | |
| **EBITDA** | **($25,966)** | **($24,375)** | **($7,475)** | **($2,059)** | **$2,536** | **$8,168** | **$15,043** |
| *% EBITDA Margin* | *(54.1%)* | *(56.6%)* | *(16.4%)* | *(3.6%)* | *3.8%* | *10.5%* | *16.5%* |