UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

Molekule Group, Inc.                                    Case No. 23-18094-EPK
                                                        (Jointly Administered)

and

Molekule, Inc.                                          Case No. 23-18093-EPK

    Debtors.                                        Chapter 11
_____/

## DEBTORS' MODIFIED AMENDED JOINT PLAN OF REORGANIZATION

December 22, 2023

Bradley S. Shraiberg
Eric Pendergraft
SHRAIBERG PAGE P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: bss@slp.law
Email: ependergraft@slp.law

**ATTORNEYS FOR THE DEBTORS**

**NOTE:  SECTIONS 8.14 AND 11.04 OF THIS PLAN CONTAIN RELEASES OF THIRD PARTIES**

**TABLE OF CONTENTS**

ARTICLE I - DEFINITIONS ................................................................................. 5
ARTICLE II - BACKGROUND OF DEBTORS AND COMMENCEMENT OF THE
CHAPTER 11 CASES ...................................................................................... 13
    2.01.   Background of the Debtors ................................................................ 13
    2.02.   Commencement of Chapter 11 Cases ............................................... 15
    2.03.   Substantive Consolidation ................................................................ 15
    2.04.   Debtor in Possession Financing ....................................................... 16
    2.05.   Wages and Critical Vendors ............................................................. 16
    2.06.   Retained Professionals ..................................................................... 17
ARTICLE III - TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE
CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES .............. 18
    3.01.   Allowed Administrative Claims. ...................................................... 18
    3.02.   Priority Tax Claims .......................................................................... 18
    3.03.   United States Trustee's Fees. ........................................................... 18
ARTICLE IV - CLASSIFICATION OF CLAIMS AN EQUITY INTERESTS....................... 19
ARTICLE V - TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS........ 19
    5.01.   Class 1.  Allowed SVB Senior Secured Claim ................................ 19
    5.02.   Class 2.  Allowed SVB Mezzanine Secured Claims ………………………..20
    5.03.   Class 3.  Allowed Trinity Secured Claim ......................................... 20
    5.04.   Class 4.  Allowed Warehouse Secured Claim .................................. 21
    5.05.   Class 5.  Allowed Unsecured Priority Wage Claims ........................ 21
    5.06.   Class 6.  Allowed Unsecured Priority Benefit Plan Contribution Claims ………22
    5.07.   Class 7.  Allowed Unsecured Priority Consumer Deposit Claims …………….22
    5.08.   Class 8.  Allowed General Unsecured Claims…………………………………..22
    5.09.   Class 9.  Allowed Intercompany Claims…………………………………….. 23
    5.10.   Class 10.  Allowed Equity Interests………………………………..……….....23
ARTICLE VI - VOTING AND DISTRIBUTIONS, ALLOWANCE OF CERTAIN
CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND
UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND EQUITY
INTERESTS ................................................................................................. 23
    6.01.   Solicitation of Votes ........................................................................ 23
    6.02.   Voting of Claims and Equity Interests.............................................. 24
    6.03.   Method of Distribution Under the Plan ............................................. 24
    6.04.   Distributions Withheld for Disputed Claims .................................... 25
    6.05.   Procedures for Allowance or Disallowance of Disputed Claims and Related
           Deadlines.......................................................................................... 26
    6.06.   Disbursing Agent and Plan Administrator........................................ 28
    6.07.   Setoffs and Recoupment .................................................................. 28
    6.08.   Estimations of Claims ...................................................................... 28
    6.09.   No Recourse...................................................................................... 29
    6.10.   Amendments to Claims .................................................................... 29
    6.11.   Postpetition Interest on Claims ........................................................ 29
    6.12.   Unclaimed Funds ............................................................................. 30

ARTICLE VII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................... 30
    7.01.   Assumption or Rejection of Executory Contracts and Unexpired Leases .......... 30
    7.02.   Cure of Defaults ........................................................................................ 31
    7.03.   Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
               Unexpired Leases Rejected Pursuant to the Plan ...................................... 32
    7.04.   Indemnification Obligations ...................................................................... 32
    7.05    Compensation and Benefit Programs ........................................................ 32
ARTICLE VIII - MEANS FOR IMPLEMENTATION AND EFFECT OF
CONFIRMATION OF PLAN ........................................................................................ 32
    8.01.   General ..................................................................................................... 32
    8.02.   Corporate Existence and Equity ................................................................. 32
    8.02.1. Officers and Directors of the Reorganized Debtor .................................... 32
    8.03.   The Reorganized Debtor and Vesting of Assets ........................................ 34
    8.04.   Effectiveness of Securities, Instruments and Agreements ......................... 34
    8.05.   Corporate Action ...................................................................................... 35
    8.06.   Approval of Agreements ........................................................................... 35
    8.07.   No Change of Control ............................................................................... 35
    8.08.   Administration After Effective Date ......................................................... 35
    8.09.   Term of Bankruptcy Injunction or Stays ................................................... 35
    8.10.   Causes of Action ...................................................................................... 35
    8.11    Discharge of Debtors and Reorganized Debtor ......................................... 35
    8.12.   Injunction Related to Discharge ................................................................ 36
    8.13.   Reserved ................................................................................................... 36
    8.14.   Release by Estates of Officers, Managers, and Directors ........................... 36
    8.15.   Injunction Against Interference with the Plan ........................................... 37
    8.16.   Votes Solicited in Good Faith ................................................................... 37
    8.17.   Reserved ................................................................................................... 37
ARTICLE IX - CONFIRMATION AND EFFECTIVENESS OF THE PLAN ..................... 38
    9.01.   Conditions Precedent to Effective Date ..................................................... 38
    9.02.   Effect of Failure of Conditions ................................................................. 38
    9.03.   Waiver of Conditions ............................................................................... 38
ARTICLE X - RETENTION OF JURISDICTION ......................................................... 39
ARTICLE XI - MISCELLANEOUS PROVISIONS ....................................................... 40
    11.01. Effectuating Documents and Further Transactions ................................... 40
    11.02. Exemption from Transfer Taxes ............................................................... 40
    11.03. Authorization to Request Prompt Tax Determinations ............................... 40
    11.04. Exculpation .............................................................................................. 41
    11.05. Injunction Relating to Exculpation ........................................................... 41
    11.06. Post-Effective Date Fees and Expenses .................................................... 41
    11.07. Payment of Statutory Fees ....................................................................... 41
    11.08. Amendment or Modification of Plan ........................................................ 42
    11.09. Severability ............................................................................................. 42
    11.10. Revocation or Withdrawal of the Plan ...................................................... 42
    11.11. Binding Effect Notices ............................................................................. 43
    11.12. Notices .................................................................................................... 43
    11.13. Governing Law ........................................................................................ 43

11.14.  Withholding and Reporting Requirements ........................................................ 44
11.15.  Section 1125(e) of the Code ............................................................................ 44
11.16.  Filing of Additional Documents ...................................................................... 44
11.17.  No Admissions ................................................................................................. 44
11.18.  Waiver of Bankruptcy Rule 3020(e) and 7062 ................................................ 44
11.19.  Time .................................................................................................................. 44
11.20.  Substantial Consummation ............................................................................... 44
11.21.  Final Decree ..................................................................................................... 45
11.22.  Inconsistency .................................................................................................... 45
11.23.  No Interest or Attorneys' Fees ......................................................................... 45
11.24.  Successors and Assigns ..................................................................................... 45
11.25.  Headings ........................................................................................................... 45
11.26.   No Penalty for Prepayment ............................................................................. 45
11.27.  Savings Clause .................................................................................................. 45
11.28.  Remedy of Defects ........................................................................................... 45
ARTICLE XII - CONCLUSION ......................................................................................... 46
CERTIFICATE OF SERVICE ............................................................................................. 46

## DEBTORS' JOINT PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

Molekule Group, Inc. ("Molekule Group") and Molekule, Inc. ("Molekule Inc.") (together, the "Debtors") hereby propose the following plan of reorganization under section 1121(a) of the Code:

## ARTICLE I - DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

"*140 Partners*" 140 Partners, L.P.

"*Actions*" shall mean all actions that a Plan Administrator, Trustee, Committee, or debtor in possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtors or the Estate against any Person.

"*Administrative Claim*" shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(1) of the Code and any fees or charges assessed against the Estates pursuant to 28 U.S.C. § 1930.

"*Allowed Amount*" shall mean with respect to a Claim (a) the amount of a Claim that was listed in the Debtors' schedules as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules:  (i) the amount stated in such proof of claim or in the schedules if no objection to such proof of claim or amount listed in the schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order.  In no event shall the Allowed Amount of any Unsecured Claim include interest accrued on such Claim after the Petition Date.

"*Allowed Claim*" shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

"*Allowed Equity Interest*" shall mean any Equity Interest which has not been timely disputed, or if timely disputed, which has been allowed by order of the Court which has become a Final Order.

"*Armistice*" shall mean Armistice Capital Master Fund Ltd.

"*Article*" shall mean one of the numbered Articles of the Plan.

"*Assets*" shall mean all of the right, title, and interest of the Debtors in and to Property of the Estate, whether tangible or intangible.

"*Assumption List*" shall mean the list of executory contracts and unexpired leases to be assumed pursuant to Article VII of the Plan, which shall be filed with the Court on or before fourteen (14) days prior to the commencement of the Confirmation Hearing.

"*Avoidance Actions*" shall mean the Actions pursuant to chapter 5 of the Code, including, without limitation, rights to recover property or money pursuant to sections 542-553 of the Code.

"*BCC*" shall mean Bridge Coast Capital, LLC.

"*Business Day*" shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in West Palm Beach, Florida are authorized or required to close.

"*Case*" shall mean the above-referenced Chapter 11 cases of Molekule Group, Inc. and Molekule, Inc. pending before the United States Bankruptcy Court for the Southern District of Florida.

"*Cash*" shall mean legal tender of the United States of America.

"*Claim*" shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

"*Class*" shall mean a group of Claims or Equity Interests classified together pursuant to Article V of the Plan.

"*Class 1*" shall mean the Allowed SVB Senior Secured Claim, as described, classified and treated in Section 5.01 of this Plan.

"*Class 2*" shall mean the Allowed SVB Mezzanine Secured Claims, as described, classified and treated in Section 5.02 of this Plan.

"*Class 3*" shall mean the Allowed Trinity Secured Claim, as described and classified in Section 5.03 of the Plan.

"*Class 4*" shall mean the Allowed Warehouse Secured Claim, as described and classified in Section 5.04 of the Plan.

"*Class 5*" shall mean the Allowed Unsecured Priority Wage Claims, as described and classified in Section 5.05 of the Plan.

"*Class 6*" shall mean the Allowed Unsecured Priority Benefit Plan Contribution Claims, as described and classified in Section 5.06 of the Plan.

"*Class 7*" shall mean the Allowed Unsecured Priority Consumer Deposit Claims, described and classified in Section 5.07 of the Plan.

"*Class 8*" shall mean the Allowed General Unsecured Claims, as described and classified in Section 5.08 of the Plan.

"*Class 9*" shall mean the Allowed Intercompany Claims, as described and classified in Section 5.09 of the Plan.

"*Class 10*" shall mean the Allowed Equity Interests, as described and classified in Section 5.10 of this Plan.

"*Code*" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq.

"*Committee*" shall mean any Official Committee of Unsecured Creditors appointed in the Molekule Inc. case pursuant to 11 U.S.C. § 1102.

"*Confirmation*" shall mean the entry by the Court of the Confirmation Order.

"*Confirmation Date*" shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

"*Confirmation Hearing*" shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Code.

"*Confirmation Order*" shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Debtors desire and shall otherwise be in a form and substance satisfactory to the Debtors.

"*Court*" shall mean the United States Bankruptcy Court for the Southern District of Florida, including any bankruptcy judge thereof, and any court having competent jurisdiction to hear appeals from the bankruptcy judges thereof.

"*Creditor*" shall mean any Person holding a Claim or Equity Interest, including Administrative Claims and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

"*Critical Vendors*" is defined in Section 2.05 of the Plan.

"*Critical Vendor Payments*" is defined in Section 2.05 of the Plan.

"*Debtors*" shall mean Molekule Group, Inc. and Molekule, Inc., and each may be referred to individually as "Debtor."

"*Debtor Releases*" is defined in Section 8.14 of the Plan.

"*De Lage Equipment*" shall mean the laboratory equipment leased by Molekule, Inc. from De Lage Landen Financial Services, Inc. pursuant to the Lease Agreement dated March 1, 2019.

"*Disputed Amount*" shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

"*Disbursing Agent*" shall mean the Reorganized Debtor.

"*DIP Claim*" shall mean all obligations due and owing by the Debtors under the DIP Credit Agreement and associated documents.

"*DIP Credit Agreement*" shall mean the Senior Secured Superpriority Debtor-in-Possession Credit Agreement between the Debtors, as borrowers; and Foundry Group Next, L.P., Bridge Coast Capital, LLC, Armistice Capital Master Fund, Ltd., and SVB Innovation Credit Fund VIII, L.P., ,as lenders; and Bridge Coast Capital, LLC, as administrative and collateral agent for itself and the other DIP Lenders.

"*DIP Financing*" is defined in Section 2.04 of the Plan.

"*DIP Orders*" shall mean the interim and final orders granting the *Emergency Motion for DIP Financing and Authority to Use Cash Collateral and for Final Hearing* filed in these Cases.

"*DIP Lenders*" shall mean Foundry Group Next, L.P.; Bridge Coast Capital, LLC; Armistice Capital Master Fund, Ltd.; and SVB Innovation Credit Fund VIII, L.P., as lenders.

"*DIP Loan*" shall mean the amounts advanced by the DIP Lenders under the DIP Credit Agreement and DIP Orders.

"*DIP Agent*" shall mean Bridge Coast Capital, LLC, as administrative and collateral agent for itself and the other DIP Lenders.

"*Disputed Claim*" shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the schedules as disputed, contingent or unliquidated, including, though not limited to, Disputed Secured Claims, Disputed Priority Claims and Disputed General Unsecured Claims. Distributions withheld for Disputed Claims are described in Article VI of the Plan. Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

"*Disputed Claims Reserve*" is defined in Section 6.04(a) of the Plan.

"***Docket***" shall mean the docket maintained in this Case by the Clerk of the Court.

"***Effective Date***" shall be upon the occurrence of the fourteen (14) days from the date of the entry of the Confirmation Order and upon which the last of the conditions precedent to the occurrence of the Effective Date set forth in Section 9.01 of the Plan occurs, unless otherwise provided for in the Confirmation Order.

"***Effective Date Contribution***" shall mean $5,000,000 less the outstanding principal balance of the DIP Loan as of the Effective Date.

"***Equity Interest***" shall mean any ownership or equity interest in the Debtors, including without limitation, interests evidenced by common or preferred stock, warrants, options, or other rights to purchase any ownership or equity interest in the Debtors.

"***Estates***" shall mean the estates created in the above-captioned cases of Molekule Group, Inc. and Molekule, Inc., pursuant to section 541 of the Code and each may be referred to individually as the "Estate".

"***Exculpated Parties***" is defined in Section 11.04 of the Plan.

"***Face Amount***" shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the schedules (as originally filed in this Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

"***Fee Request***" shall mean an application or request for payment by the Estates of fees, compensation for services rendered or reimbursement of expenses, pursuant to Rule 2016 of the Rules or other applicable provision of the Code or the Rules.

"***Final Order***" shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Debtor, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Debtors may waive such requirement in accordance with the Plan.

"***Foundry***" shall mean Foundry Group Next, L.P.

"***General Unsecured Claim***" shall have the same meaning as Unsecured Claim.

"***Governmental Claims Bar Date***" shall mean the date scheduled by the Court as the last date for a governmental unit to file Proofs of Claim in the Case.

"***Impaired***" shall mean an Allowed Claim or Allowed Equity Interest that is Impaired within the meaning of section 1124 of the Code.

"***Insider(s)***" shall mean those Persons defined in section 101(31)(B) of the Code.

"***Khoury***" shall mean Amin J. Khoury.

"***Lien***" shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

"***Mezzanine Loan Agreement***" shall mean the Mezzanine Loan and Security Agreement dated March 22, 2021 between Silicon Valley Bank and Molekule, Inc.

"***Mezzanine Joinder***" shall mean the Joinder and Third Loan Modification Agreement dated January 12, 2023 between the Debtors and Silicon Valley Bank.

"*New Equity Holders*" is defined in Section 8.02 of the Plan.

"***Objection Deadline***" is defined in Section 6.05(a) of the Plan.

"***Objection to Rejection Claims Deadline***" is defined in Section 6.05(a) of the Plan.

"***OMD Released Parties***" shall mean the Debtors' current and former officers, managers, and directors.

"***Person***" shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

"***Petition Date***" shall mean October 3, 2023, the date on which both Molekule Group, Inc. and Molekule, Inc. commenced the above-captioned cases by filing a voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code.

"***Plan***" shall mean this Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

"***Priority Claim***" shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507 of the Code.

"***Priority Tax Claim***" shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

"***Property of the Estate***" shall mean the property defined in section 541 of the Code as it relates to the Debtors.

"***Pro Rata***" shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed General Unsecured Claim or Disputed Equity Interest has not been finally resolved, an appropriate reserve for payment of such Disputed General Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed General Unsecured Claim or Disputed Equity Interest upon final resolution of the dispute.

"***Pro Rata Contribution Percentage***" shall mean (i) Foundry 44%, (ii) BCC 24%, (iii) Armistice 22%, and (iv) SVBC 10%.

"***Raymond Equipment***" shall mean the forklift system leased by Molekule, Inc. from Raymond Leasing Corporation pursuant to the Equipment Master Lease Agreement dated March 4, 2019.

"***Reorganized Debtor***" shall mean Molekule Group, Inc., as substantively consolidated with Molekule, Inc., and as reorganized on or after the Effective Date.

"***Restructuring Support Agreement***" shall mean the Restructuring Support Agreement, dated as of October 3, 2023, among Molekule Group, Inc., Molekule, Inc., Silicon Valley Bank, a division of First-Citizens Bank & Trust Company, SVB Innovation Credit Fund VIII, L.P., Trincap Funding, LLC (as successor in interest to Trinity Capital Inc.), Foundry Group Next, L.P., Bridge Coast Capital, LLC, and Armistice Capital Master Fund Ltd.

"***Rules***" shall mean the Federal Rules of Bankruptcy Procedure.

"***San Francisco Lease***" means the lease, as amended, of the premises located at 1301 Folsom Street, San Francisco, California 94103 between Molekule, Inc. and 140 Partners, L.P.

"***Section***" shall mean a numbered subsection of any Article of the Plan.

"***Secured Claim***" shall mean a Claim secured by a Lien on property in which the estate of Molekule Group, Inc. or the estate of Molekule, Inc. have an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estates' interest in such property or to the extent of the amount subject to set-off.

"***Secured Taxing Authority Claim***" shall mean ad valorem taxes assessed against the real property owned by the Debtors in the ordinary course of business, if any.

"***Senior Loan Agreement***" shall mean the Amended and Restated Loan and Security Agreement dated August 29, 2019 between Silicon Valley Bank and Molekule, Inc.

"***Senior Joinder***" shall mean the Joinder and Sixth Loan Modification Agreement dated January 12, 2023 between the Debtors and Silicon Valley Bank

"***Substantial Consummation***" shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

"***SVB***" shall mean Silicon Valley Bank, a division of First Citizens Bank.

"***SVBC***" shall mean SVB Innovation Credit Fund VIII, L.P., an affiliate of Silicon Valley Bank.

"***Toyota Equipment***" means the forklift system leased by Molekule, Inc. from Nationwide Lift Trucks Inc. pursuant to the Equipment Lease Agreement dated July 28, 2021.

"***Trinity***" shall mean Trincap Funding, LLC (as successor in interest to Trinity Capital Inc.), including any successor in interest thereof.

"***Trinity Equipment***" shall mean the "Equipment," as defined in the Trinity Equipment Lease Documents, including all proceeds, claims, and causes of action including the proceeds of any arbitration award therefrom, including a senior lien on a certain arbitration action concerning such equipment that is pending in Germany

"***Trinity Equipment Lease Documents***" shall mean the Master Lease Agreement dated June 19, 2020 between Trinity and Molekule, Inc. and related agreements, documents, promissory notes, financing statements or instruments, as have been further amended, modified, restated, replaced or supplemented from time to time.

"***Trinity Equipment Lease Obligations***" is defined in Section 2.01 of the Plan.

"***Trinity Joinder***" shall mean the Joinder to Master Lease Agreement dated January 12, 2023 between the Debtors and Trinity.

"***Unimpaired***" shall mean an Allowed Claim or Allowed Equity Interest that is <u>not</u> Impaired within the meaning of section 1124 of the Code.

"***United States***" shall mean the United States of America.

"***United States Claim***" shall mean the Claim held by the United States.

"***Unsecured Claim***" shall mean a Claim other than a Secured Taxing Authority Claim, a Secured Claim, the United States Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

"***Unsecured Creditor***" shall mean the holder of an Unsecured Claim.

"***U.S. Trustee's Fees***" shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

"***Rules of Construction and Interpretation***"

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to".

(b) Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.


## ARTICLE II - BACKGROUND OF DEBTORS AND COMMENCEMENT OF THE CHAPTER 11 CASES

### 2.01.  Background of the Debtors

The Debtors are: (a) Molekule Group, a Delaware corporation which is a holding company; and (b) Molekule Inc, a Delaware corporation which is an operating company.  Molekule Inc. is a wholly owned subsidiary of Molekule Group.

The shares of Molekule Group are traded on the Nasdaq Stock Exchange under ticker symbol MKUL.

Molekule Inc. manufactures air purifiers which utilize a mixture of HEPA and carbon filtration and photo electrochemical oxidation or a mixture of HEPA and carbon filtration and UV-C sterilization.

The present structure of the Debtors resulted from the January 2023 merger of AeroClean Technologies, Inc. (Nasdaq ticker symbol AERC) and Molekule, Inc. in an all-stock transaction

wherein Molekule Inc.'s shareholders ended up owning 49.5% of AeroClean, AeroClean owned Molekule, Inc., and AeroClean changed its name to Molekule Group, Inc.

The Debtors do not own any real property. The Debtors' principal address is 10455 Riverside Drive, Suite 100, Palm Beach Gardens, Florida 33410.  Molekule Inc. also operates from a manufacturing facility in Lakeland, Florida.

Foundry Group Next, L.P. ("Foundry") is Molekule Group's largest shareholder and is affiliated with Brad Feld, a member of Molekule Group's board of directors.  Amin J. Khoury "Khoury") is Molekule Group's second largest shareholder and is chairman of the board of directors of Molekule Group.  Armistice Capital Master Fund Ltd. ("Armistice") is Molekule Group's third largest shareholder.

The Debtors' largest creditor is Silicon Valley Bank, a division of First Citizens Bank ("SVB").  Molekule Inc. and SVB are parties to the Amended and Restated Loan and Security Agreement dated August 29, 2019 (the "Senior Loan Agreement").  Molekule Inc. and SVB are also parties to the Mezzanine Loan and Security Agreement dated March 22, 2021 (the "Mezzanine Loan Agreement").  The Debtors and SVB subsequently entered into the Joinder and Sixth Loan Modification Agreement dated January 12, 2023 (the "Senior Joinder") and the Joinder and Third Loan Modification Agreement dated January 12, 2023 (the "Mezzanine Joinder"), the result of which is that Molekule Inc. and Molekule Group are jointly and severally liable on the Senior Loan Agreement and the Mezzanine Loan Agreement.  The Senior Loan Agreement and the Mezzanine Loan Agreement are each secured by a senior lien on substantially all of the Debtors' personal property, excluding the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment.   The outstanding balance on the Senior Loan Agreement is approximately $4,463,399.92, and includes the approximately $333,221.00 in obligations of the Debtors under a credit card account with SVB.  The outstanding balance on that Mezzanine Loan Agreement is approximately $30,000,000 and is secured by a junior lien on the same collateral that secures SVB's Senior Loan Agreement.  As to the Mezzanine Loan Agreement, SVB holds the same with its affiliate, SVB Innovation Credit Fund VIII, L.P. ("SVBC").

Pursuant to the Master Lease Agreement dated June 19, 2020, and related agreements, documents, promissory notes, financing statements or instruments, as have been further amended, modified, restated, replaced or supplemented from time to time (the "Trinity Equipment Lease Documents"), Molekule Inc. financed, and leased, certain equipment located at Molekule Inc.'s Lakeland, Florida facility from Trincap Funding, LLC (as successor in interest to Trinity Capital Inc.), including any successor in interest thereof ("Trinity")  The Debtors and Trinity subsequently entered into the Joinder to Master Lease Agreement dated January 12, 2023 (the "Trinity Joinder"), resulting in Molekule Inc. and Molekule Group each being jointly and severally liable on the Trinity Equipment Lease Documents.  The Trinity equipment lease obligations are secured by a junior lien on the general assets of the Debtors, and a senior lien on certain "Equipment," as defined in the Trinity Equipment Lease Documents including all proceeds, claims, and causes of action including the proceeds of any arbitration award therefrom, including a senior lien on a certain arbitration action concerning such equipment that is pending in Germany (the "Trinity

Equipment")[1] The outstanding prepetition balance under the Trinity Equipment Lease Documents is not less than **$2,228,259.19** consisting of (x) [$1,608,319.90] in outstanding monthly rent payments as of the Petition Date; (y) $619,939.29 in final payments plus (z) all additional accrued and unpaid interest, fees, costs, expenses, indemnification obligations, charges, and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Trinity Equipment Lease Documents (collectively, the "Trinity Equipment Lease Obligations")

The Debtors are party to several equipment leases. Specifically, Molekule Inc. leases certain laboratory equipment (the "De Lage Equipment") from De Lage Landen Financial Services, Inc. pursuant to the Lease Agreement dated March 1, 2019. Molekule Inc. leases a forklift system (the "Raymond Equipment") from Raymond Leasing Corporation pursuant to the Equipment Master Lease Agreement dated March 4, 2019. Molekule Inc. leases a different forklift system (the "Toyota Equipment") from Nationwide Lift Trucks Inc. pursuant to the Equipment Lease Agreement dated July 28, 2021.

## 2.02.  Commencement of Chapter 11 Cases

The Debtors each filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code on October 3, 2023 in order to attempt to reorganize themselves and restructure their debts.

The Debtors' bankruptcy petitions were made necessary due to Molekule Inc.'s lease of commercial real property in San Francisco, California from 140 Partners, L.P. ("140 Partners"). In February of 2019, Molekule Inc. entered into a lease agreement (the "San Francisco Lease") with 140 Partners to lease roughly 38,000 square feet of space for Molekule Inc.'s headquarters at the premises located at 1301 Folsom Street, San Francisco, California 94103, for 84 months, with monthly base rent starting at $209,231.00. However, due to the changing remote work dynamics accelerated by the COVID-19 pandemic, as well as the effect of San Francisco's homelessness crisis on the leased premises, Molekule, Inc. was forced to abandon is San Francisco location, and neither of the Debtors presently operate from such location. Following the abandonment of the property relating to the San Franciso Lease, 140 Partners filed a lawsuit against Molekule, Inc. to enforce the San Francisco Lease on September 19, 2023 in the Superior Court of the State of California, County of San Francisco, Case No. CGC-23-609205.

Through the bankruptcy process, Molekule, Inc. will reject the San Francisco Lease via a motion with the Court and to have any Allowed Claim resulting from such lease rejection treated as a General Unsecured Claim subject to the statutory cap set forth in 11 U.S.C. § 502(b)(6).

## 2.03.  Substantive Consolidation

Through the Plan, the Debtors propose to substantively consolidate Molekule Inc. with Molekule Group. Since Molekule Group was formed in 2023, Molekule Group and Molekule Inc.

---

[1] The relative priorities of Trinity and SVB are governed by the Subordination Agreement entered into by Trinity and SVB on June 19, 2020.

have operated as a consolidated entity with their books consolidated.  Neither Debtor maintains separate books, and neither Debtor separately tracks its due-to payables or due-from receivables.  Since January 2023, the Debtors have been jointly operating the Molekule air purifier business, with sales, revenue, receivables and expenses commingled between the Debtors.

Substantive consolidation is appropriate where there is substantial identity between the entities to be consolidated, and consolidation is necessary to avoid some harm or to realize some benefit to the estate.  There is substantial identity between the Debtors because: (a) Molekule Inc. is a wholly owned subsidiary of Molekule Group; (b) the Debtors share the same principal address in Palm Beach Gardens, Florida; (c) the Debtors have jointly operated the air purifier business, with sales, revenue, receivables and expenses commingled between the Debtors; (d) the individuals serving on the Debtors' respective boards of directors are identical; (e) as a result of the foregoing, it would be extremely difficult to segregate and ascertain individual assets and liabilities, and there exists commingling of assets and business functions; (f) the Debtors are both jointly and severally liable on, and have substantially all of their assets fully encumbered by, the DIP Facility Documents, held by the DIP Lenders, and the Senior Loan Agreement and the Mezzanine Loan Agreement held by SVB and SVBC; and (g) the Debtors are both jointly and severally liable on the Trinity Equipment Lease Documents.

Upon Confirmation of the Plan, Molekule Inc. will be substantively consolidated with Molekule Group, including for the following purposes: (a) treating assets of the Debtors as being a single estate of Molekule Group, including Avoidance Actions under chapter 5 of the Code, (b) treating all claims against the Debtors as against the single estate of Molekule Group, and (c) eliminating duplicative claims by the same creditor asserted against more than one estate.  Following Confirmation of the Plan, Molekule Group will be vested in all substantively consolidated estate assets and will be the Reorganized Debtor.  All distributions under the Plan shall come from the substantively consolidated estate.

### 2.04. __Debtor in Possession Financing__

On the Petition Date, the Debtors filed a motion seeking authorization from the Court to obtain $3,000,000 in post-petition debtor in possession financing (the "DIP Financing"), with such DIP Financing being secured by a super-priority, first-position priming lien on all of the Debtors' assets other than the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment pursuant to 11 U.S.C. § 364(d), and with such DIP Financing being allowed as a super-priority administrative expense pursuant to 11 U.S.C. § 364(c)(1).  Such $3,000,000 in DIP Financing was provided proportionately by the following entities (together, the "DIP Lender"), with Bridge Coast Capital, LLC serving as the administrative and collateral agent (the DIP Agent") for the DIP Lender pursuant to the terms set forth in the motion and approved by the Court:

a. Foundry, 44%;

b. BCC, an affiliate of Khoury, 24%;

c. Armistice, 22%; and

d. SVBC, 10%.

As set forth in Section 3.02 of the Plan, on the Effective Date, the DIP Lenders shall pay the Effective Date Contribution and receive 63% of the equity interests in the Reorganized Debtor in full satisfaction of the amounts due under the DIP Financing.

### 2.05.   **Wages and Critical Vendors**

Through a motion filed with the Court, the Debtors sought and received the Court's authority to pay the pre-Petition wages, and benefits owed to the Debtors' employees pursuant to 11 U.S.C. §§ 105(a) and 507(a)(4).  Through a motion filed with the Court, the Debtors also sought and received from the Court authority to pay the pre-Petition claims of certain vendors (the "Critical Vendors") that are critical to the Debtors' continued, post-Petition operations, with such payments (the "Critical Vendor Payments") not being subject to the avoidance and recovery by any Plan Administrator, estate, debtor in possession, trustee, or committee pursuant to 11 U.S.C. §§ 544, 547, 548, 549, or 550, provided that at least $150,000 is distributed from the Estates to holders of Allowed General Unsecured Claims on the Effective Date of the Plan.

### 2.06.   **Retained Professionals**

Through applications filed with the Court, the Debtors intend to retain certain professionals in connection with the Debtors' cases, including Shraiberg Page P.A. as general bankruptcy counsel; the law firm of Travis Law PLLC as Molekule Inc.'s special counsel for an ongoing arbitration sited in Germany;  the Yocca Law Firm for the arbitration, ongoing litigation against Aura Smart Air, Ltd., and employment issues; the Law Offices of Stacy Grossman for trademark prosecution; the Marbury Law Group for various intellectual property matters; Freshfields Bruckhaus Deringer US LLP to advise the Debtors' board of directors; Schox PLC for patent prosecution.  The Debtors also intend to or have retained Moecker Auctions, Inc. to value the Debtors' personal property; KapilaMukamal, LLP to value the Debtors' business as a going concern; and Grassi Advisors & Accountants to value the Debtors' intellectual property.

The Debtors may seek to employ additional professionals in connection with their cases. Moreover, Section 6.06 the Plan provides that, upon the Effective Date, the Estates shall employ a Plan Administrator, who may thereafter seek to employ additional professionals.

### ARTICLE III - TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES

The following Administrative Claims, Priority Tax Claims, and United States Trustee's Fees will be treated as follows:

### 3.01.    Allowed Administrative Claims.

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims. All other holders of Allowed Administrative Claims (with the exception of estate professionals who will be paid 100% of the amount allowed by the Court upon application to the Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Court or agreed to by the holder of such Claim, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order. Allowed Administrative Claims shall be paid from funds generated from the Debtors' operation, cash on hand, and retainers held by professionals.

### 3.02.    DIP Claim

On the Effective Date, the DIP Lenders shall pay to the Reorganized Debtor the Effective Date Contribution and receive 63% of the equity interests in the Reorganized Debtor, to be distributed to the holders in accordance with their respective Pro Rata Contribution Percentage, in full satisfaction, settlement, release, extinguishment and discharge of the DIP Claim.

### 3.03.    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of the Reorganized Debtor's business on the date of assessment of such Claim.

### 3.04.    United States Trustee's Fees.

The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of the Case by the issuance of a Final Decree by the Court, or upon entry of an order of the Court dismissing the Case, or converting the Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods. The foregoing fees shall be paid from funds generated from the Reorganized Debtor's operation.

## ARTICLE IV - CLASSIFICATION OF CLAIMS AN EQUITY INTERESTS

For purposes of this Plan, the Classes of Claims and Equity Interests against or in the Debtors shall be as follows:

| Class | Description | Status | Voting Status |
|-------|-------------|--------|---------------|
| Class 1 | Allowed SVB Senior Secured Claim | Impaired | Entitled to vote |
| Class 2 | Allowed SVB Mezzanine Secured Claims | Impaired | Entitled to vote |
| Class 3 | Allowed Trinity Secured Claim | Impaired | Entitled to vote |
| Class 4 | Allowed Warehouse Secured Claim | Unimpaired | Deemed to accept |
| Class 5 | Allowed Unsecured Priority Wage Claims | Unimpaired | Deemed to accept |
| Class 6 | Allowed Unsecured Priority Benefit Plan Contribution Claims | Unimpaired | Deemed to accept |
| Class 7 | Allowed Unsecured Priority Consumer Deposit Claims | Unimpaired | Deemed to accept |
| Class 8 | Allowed General Unsecured Claims | Impaired | Entitled to vote |
| Class 9 | Allowed Intercompany Claims | Impaired | Deemed to reject |
| Class 10 | Allowed Equity Interests | Impaired | Deemed to reject |

## ARTICLE V - TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 5.01.  Class 1.  Allowed SVB Senior Secured Claim

(a)    Description.  Class 1 consists of the senior secured debt in the approximate amount of $5,300,000 held by SVB, memorialized by the Senior Loan Agreement and the Senior Joinder, and generally secured by a senior lien on substantially all of the Debtors' personal property, excluding the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment.

(b)    Treatment.  On the Effective Date, the Allowed SVB Senior Secured Claim, the Senior Loan Agreement, and all loan documents related thereto, shall be assumed by the Reorganized Debtor, with the existing maturity date of **March 1, 2028** remaining in place, but with the following modifications:

(i) The limit on the SVB credit card debt portion of the Allowed SVB Senior Secured Claim shall be reduced to $500,000 on the Effective Date.  If the outstanding balance on such credit card portion exceeds $500,000 on the Effective Date, the Debtors or the Reorganized Debtor shall pay to SVB such excess amount on or before the Effective Date so that the maximum outstanding balance on the credit card portion does not exceed $500,000;

(iii) The Reorganized Debtor shall make monthly payments of accrued interest as and when due under the Senior Loan Agreement; and

(iii) The principal balance of the Allowed SVB Senior Secured Claim shall be repaid in monthly payments of $75,094.16 each beginning on the Effective Date and continuing on the first day of each calendar month thereafter.  All unpaid principal, together with accrued interest and all other obligations under the Senior Loan Agreement shall be repaid in full on March 1, 2028.

On or before the Effective Date, the Reorganized Debtor shall execute an amendment to the Senior Loan Agreement memorializing the foregoing modifications, which amendment shall be in a form and substance acceptable to SVB in all respects.  All liens securing the Allowed SVB Senior Secured Claim shall remain in place until such time as the Allowed SVB Senior Secured Claim is paid in full.

(c)     Impairment.  The Class 1 Claim is Impaired.

**5.02    Class 2.  Allowed SVB Mezzanine Secured Claims**

(a)     Description.  Class 2 consists of: (i) the junior secured debt in the amount of $15,905,208.50 held by SVB, memorialized by the Mezzanine  Loan Agreement and the Mezzanine Joinder, and generally secured by a junior lien on substantially all of the Debtors' personal property, excluding the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment; and (ii)  the junior secured debt in the approximate amount of  $15,905,208.50 held by SVBC, memorialized by the Mezzanine  Loan Agreement and the Mezzanine Joinder,  and generally secured by a junior lien on substantially all of the Debtors' personal property, excluding the De Lage Equipment, the Raymond Equipment, the Toyota Equipment, and the Trinity Equipment

(b)     Treatment.  SVB and SVBC shall each have an allowed Class 2 Secured Claim in the amount of $5,000,000 (each a "Secured Mezz Term Loan Claim" and together, the "Secured Mezz Term Loan Claims").  On the Effective Date, as set forth in Section 8.02 of the Plan, in full satisfaction, settlement, release, extinguishment and discharge of the Secured Mezz Term Loan Claims,, each holder of an Allowed Secured Mezz Term Loan Claim shall receive 18.5% of the new equity interests in the Reorganized Debtor. In addition, each holder of an Allowed Secured Mezz Term Loan Claim shall have an allowed Class 8 General Unsecured Claim in the amount of $10,905,205.50 (together, the "Mezz Term Loan Deficiency Claims") treated in accordance with Section 5.08 of the Plan.

(c)     Impairment.  The Class 2 Claims are Impaired.

**5.03.    Class 3.  Allowed Trinity Secured Claim**

(a)     Description. Class 3 consists of the allowed secured debt held by Trinity in the amount of the Trinity Equipment Lease Obligations, memorialized by the Trinity Equipment Lease

Documents and Trinity Joinder, and secured by a junior lien on the general assets of the Debtors, as well as a senior lien on the Trinity Equipment.

(b)       Treatment. On the Effective Date, the holder of the Allowed Trinity Secured Claim shall receive, at the Reorganized Debtor's option and in its sole discretion, the following treatment: (i) payment in full, in cash in complete satisfaction, settlement, release, extinguishment and discharge of such claim; **_or_** (ii) assumption of the Allowed Trinity Secured Claim and the Trinity Equipment Lease Documents by the Reorganized Debtor.  If the Allowed Trinity Secured Claim is assumed by the Reorganized Debtor, the parties have agreed that the monthly rent factor to be used for calculating Basic Rent on the Allowed Trinity Secured Claim shall accrue at a rate equal to 0.030136 , but no payment of Rent shall be due until maturity, when the full balance (including all accrued and unpaid prepetition and postpetition Rent, the Final Payment, and other unpaid obligations under the Trinity Equipment Lease Documents) of the Allowed Trinity Secured Claim shall be paid, with such maturity occurring upon the earliest of: (I) December 31, 2024, (II) the consummation of the sale of substantially all of the Trinity Equipment, or (II) the consummation of any sale of substantially all of the assets or equity interests in the Reorganized Debtor that occurs after the Effective Date.

All liens securing the Allowed Trinity Secured Claim shall remain in place until such time as the Allowed Trinity Secured Claim is paid in full, in cash.

(c)       Impairment.  The Class 3 Claim is Impaired.

### 5.04.   Class 4.  **Allowed Warehouse Secured Claim**

(a)       Description. Class 4 consists of the secured debt in the approximate amount of $242,067.07 owing to ALOM Technologies Corp., the landlord of the warehouse facilities utilized by the Debtor in Fremont, California and Indianapolis, Indiana, and secured by a lien on the Debtor's assets stored therein.

(b)       Treatment. To the extent that the holder of the Allowed Warehouse Secured Claim has not already been paid in full via Critical Vendor Payment or paid as otherwise authorized by the Court, then, in full satisfaction, settlement, release, extinguishment and discharge of such claim, the holder of the Allowed Warehouse Secured Claim receive payment in full in cash by the Reorganized Debtor on the Effective Date.

(c)       Impairment.  The Class 4 Claim is Unimpaired.

### 5.05.   Class 5.  **Allowed Unsecured Priority Wage Claims**

(a)       Description. Class 5 consists of the unsecured claims of the Debtors' current or former employees and contractors to the extent such claims are entitled to priority status pursuant to 11 U.S.C. § 507(a)(4).

(b)       Treatment.  On the Effective Date, and except to the extent that a holder of an allowed Class 5 Claim has been paid prior to the Effective Date or agrees to different treatment,

in full satisfaction, settlement, release, extinguishment and discharge of such claims, each holder of an Allowed Unsecured Priority Wage Claim shall receive payment in full in cash by the Reorganized Debtor.  To the extent any person holds an unsecured claim that exceeds the statutory cap set forth in 11 U.S.C. § 507(a)(4), such claim shall be treated as a General Unsecured Claim in Class 8 of the Plan.

(c)    Impairment.  The Class 5 Claims are Unimpaired.

**5.06.    Class 6.    Allowed Unsecured Priority Benefit Plan Contribution Claims**

(a)    Description.    Class 6 consists of the unsecured claims for contributions to the Debtors' employee benefit plans to the extent such claims are entitled to priority status pursuant to 11 U.S.C. § 507(a)(5).

(b)    Treatment.    On the Effective Date, and except to the extent that a holder of an allowed Class 6 Claim has been paid prior to the Effective Date or agrees to different treatment, in full satisfaction, settlement, release, extinguishment and discharge of such claims, each holder of an Allowed Unsecured Priority Benefit Plan Contribution Claim shall receive payment in full in cash by the Reorganized Debtor.  To the extent any person holds an unsecured claim that exceeds the statutory cap set forth in 11 U.S.C. § 507(a)(5), such claim shall be treated as a General Unsecured Claim in Class 8 of the Plan.

(c)    Impairment.  The Class 6 Claims are Unimpaired.

**5.07.    Class 7.    Allowed Unsecured Priority Consumer Deposit Claims**

(a)    Description.    Class 7 consists of the unsecured claims held by individuals for deposits to the Debtors to the extend such claims are entitled to priority status pursuant to 11 U.S.C. § 507(a)(7).  The Debtors are unaware of any such claims.

(b)    Treatment.    On the Effective Date, and except to the extent that a holder of an allowed Class 7 Claim has been paid prior to the Effective Date or agrees to different treatment, in full satisfaction, settlement, release, extinguishment and discharge of such claims, each holder of an Allowed Unsecured Priority Consumer Deposit Claim shall receive payment in full in cash by the Reorganized Debtor.  To the extent any person holds an unsecured claim that exceeds the statutory cap set forth in 11 U.S.C. § 507(a)(7), such claim shall be treated as a General Unsecured Claim in Class 8 of the Plan.

(c)    Impairment.  The Class 7 Claims are Unimpaired.

**5.08.    Class 8.    Allowed General Unsecured Claims**

(a)    Description.    Class 8 consists of the general unsecured claims creditors, including all allowed claims arising from the Debtors' rejection of executory contracts and unexpired leases.

(b)    Treatment.    In full satisfaction, settlement, release, extinguishment, and discharge of such claims, (i) on the Effective Date, each holder of an Allowed General Unsecured Claim

shall receive from the Reorganized Debtor a one-time Pro Rata Distribution from a total of $150,000; and (ii) after the Effective Date, and pursuant to further order or orders of the Court, all net proceeds received or obtained by the Plan Administrator resulting from any demand, pursuit, award, or settlement of any Avoidance Action that is not an Avoidance Action to avoid or recover any Critical Vendor Payment as set forth in Section 6.06 of the Plan; provided, however, that any pro rata distribution attributable to the Mezz Term Loan Deficiency Claims will be reallocated and distributed to all holders of other allowed General Unsecured Claims until all other General Unsecured Claims have been paid in full, after which distributions on account of General Unsecured Claims will be made on account of the Mezz Term Loan Deficiency Claims until the Mezz Term Loan Deficiency Claims are paid in full.

(c)    Impairment.  The Class 8 Claims are Impaired.

**5.09.  Class 9.  Allowed Intercompany Claims**

(a)    Description.  Class 9 consists of the claims by either Debtor against the other Debtor.

(b)    Treatment.  On the Effective Date, all Allowed Intercompany Claims shall be cancelled and extinguished, and the holders of such claims shall receive no distribution under the Plan on account of such claims.

(c)    Impairment.  The Class 9 Claims are Impaired.

**5.10.  Class 10.  Allowed Equity Interests**

(a)    Description.  Class 10 consists of Allowed Equity Interests.  Equity Interests consist of any share of preferred stock, common stock or other instrument evidencing an ownership interest in the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

(b)    Treatment.  On the Effective Date, all Allowed Equity Interests in the Debtors shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and the holders of Allowed Equity Interests shall receive no distribution.

(c)    Impairment.  The Class 10 Interests are Impaired.

**ARTICLE VI - VOTING AND DISTRIBUTIONS, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS**

### 6.01.    Solicitation of Votes

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in Classes 1, 2, 3, and 8 are impaired and entitled to vote on the Plan.  The Claims in Classes 4, 5, 6, and 7 are unimpaired and are conclusively presumed to have accepted the Plan and the solicitation of acceptances with respect to such Class therefore is not required under section 1126(f) of the Code. Holders of Claims and Interests in Classes 9 and 10 will not receive any distribution, are not entitled to vote, and are deemed not to have accepted the Plan under section 1126(g).

An Impaired Class of Claims will have accepted the Plan if: i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.  An Impaired Class of Interests will have accepted the Plan if the holders of at least two-thirds in amount of the Allowed Interests actually voting in the Class have voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.  A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.

### 6.02.    Voting of Claims and Equity Interests

Each holder of an Allowed Claim or Equity Interest in an Impaired Class of Claims or Equity Interests that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.  Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

### 6.03.    Method of Distribution Under the Plan

(a)    Subject to Rule 9010, and except as otherwise provided in Sections 6.04 and 6.06 of the Plan, all distributions under the Plan shall be made by the Reorganized Debtor to the holder of each Allowed Claim in the manner provided for in the Plan, at the address of such holder as listed on the schedules and/or Proof of Claim as of the Confirmation Date unless the Debtors or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the schedules.

(b)    Except as otherwise provided for in the Plan and Confirmation Order, any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 6.03(f) of the Plan.

(e)    In the event that any distribution to any holder is returnable as undeliverable, the Debtors shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Debtors have determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided that any distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date or the distribution date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(f)    Unless otherwise provided herein, all initial distributions and deliveries shall be made on the Effective Date.

(g)    At the close of business on the date of the Confirmation Hearing, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtors shall have no obligation to recognize any transfer of any Claims occurring after the date of the Confirmation Hearing; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the date of the Confirmation Hearing and prior to the Effective Date, if applicable.  The Debtors shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the date of the Confirmation Hearing.

### 6.04.  <u>Distributions Withheld for Disputed Claims</u>

(a)    *Establishment and Maintenance of Reserve*

On the initial distribution date and each subsequent distribution date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtors or the Court in accordance with the Plan (the "<u>Disputed Claims Reserve</u>").

(b)    *Property Held in Disputed Claims Reserve*

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Reorganized Debtor for the benefit of the potential recipients of such Cash and shall not constitute property of the Reorganized Debtor.  In the event the Court subsequently disallows a Disputed Claim, Cash and any other consideration in the Disputed Claims Reserve on account of such disallowed Disputed Claim, and any other

consideration actually distributed on account of such Disputed Claim, shall vest in the Reorganized Debtor.

    (c)    *Distributions Upon Allowance of Disputed Claims*

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

    (d)    *No Surplus Distributions to Holders of Allowed Claims*

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Reorganized Debtor.

    (e)    *Expenses of Disputed Claims Reserve*

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtor on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtor.

### 6.05.    <u>Procedures for Allowance or Disallowance of Disputed Claims and Related Deadlines</u>

    (a)    *Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims*

Any and all objections to any claim must be filed by the deadline set by the Court (the "<u>Objection Deadline</u>"), or with respect to rejection claims, within five (5) days after the filing of any rejection claim (the "<u>Objection to Rejection Claims Deadline</u>"). In the event that the Debtors or Reorganized Debtor settle any claim objection, the Debtors or Reorganized Debtor may seek approval by submitting an Agreed Order in a form acceptable to the Debtors and the holder of the Disputed Claim. In the event that the Debtors and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtors or Reorganized Debtor will set the contested matter for hearing before the Bankruptcy Court and will provide all interested parties with notice of the date set.

If any distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder. A distribution of funds is unclaimed, if, without limitation, the holder of an Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the schedules, the amended schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtors or the Reorganized Debtor shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date. All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court.  Unless otherwise ordered by the Court, the Debtors or the Reorganized Debtor shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court.  The Debtors or the Reorganized Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business.  The Reorganized Debtor shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

Subject to applicable law, from and after the Effective Date, the Debtors will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan.  Any and all objections to any claim must by filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline.

An objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtors, at any time on or before the Claim Objection Deadline. The failure by Debtors to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtors' right to object to, or re-examine, any such Claim in whole or in part.

**ANY CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT ARE NOT FILED WITHIN THE TIMES SET FORTH HEREIN WILL BE AUTOMATICALLY DISALLOWED, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTOR, THE ESTATE, OR PROPERTY OF THE FOREGOING PARTIES, WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTORS OR THE REORGANIZED DEBTOR, AS APPLICABLE, OR FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF THE COURT OR ANY OTHER ENTITY, AND ANY CLAIM ARISING OUT OF THE REJECTION OF THE EXECUTORY CONTRACT OR UNEXPIRED LEASE SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND DISCHARGED.**

(b)     *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

*(c)    Disallowed Claims*

All Claims held by Persons against whom the Debtors, the Reorganized Debtor, Plan Administrator have commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant Section 6.05(c) of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estates from such party have been paid.

### 6.06.    Disbursing Agent and Plan Administrator

Following the Effective Date, the Reorganized Debtor shall employ a Plan Administrator, with the Reorganized Debtor providing a $50,000 fee and expense retainer for such employment.

Notwithstanding Section 8.03 of the Plan, the Plan Administrator shall be vested, for the benefit of holders of Allowed Class 8 Claims, with all Avoidance Actions that are not an Avoidance Action to avoid or recover any Critical Vendor Payment.  The Plan Administrator may employ one or more professionals subject to Court approval, and, notwithstanding any contrary provision of Federal Rule of Bankruptcy Procedure 2002(a)(3), may provide notice of hearings to approve settlements or compromised via electronic CM/ECF service upon the Debtors' twenty largest unsecured creditors without further notice.

The Plan Administrator will make all distributions required to be distributed under the applicable provisions of the Plan and will serve without bond.

The Plan Administrator may apply to the Court for approval of reasonable compensation and reimbursement of reasonable and necessary costs and expenses up to the $50,000 fee and expense retainer, with any fees and expenses above such amount payable from the gross proceeds of any Avoidance Action but not otherwise payable by the Estates, the Debtors, or the Reorganized Debtor.

### 6.07.    Setoffs and Recoupment

The Debtors may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim or Equity Interest and the payments to be made pursuant to the Plan in respect of such Claim or Equity Interest, any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any setoff or recoupment right they may have against the holder of such Claim or Equity Interest.

### 6.08.    Estimations of Claims

For purposes of calculating and making distributions under the Plan, the Debtors, or Reorganized Debtor, as applicable, and the holder of a Disputed Claim shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum

dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class. The Debtors, Reorganized Debtor and holder of a Disputed Claim may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtors or Reorganized Debtor previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 6.09. No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtors, the Reorganized Debtor, or any of their respective professionals, consultants, officers, directors or affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### 6.10. Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtors, the Reorganized Debtors or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 6.11. Postpetition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the applicable petition date on account of any Claim.

6.12.   **Unclaimed Funds**

Any funds unclaimed for the period described in paragraph 6.03(e) above shall be forfeited by the holder and will be re-deposited in the Reorganized Debtor's account.


## ARTICLE VII - EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

7.01.   **Assumption or Rejection of Executory Contracts and Unexpired Leases**

*(a)      Executory Contracts and Unexpired Leases*

The Code grants the Debtors the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtors and any Person shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease: i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date, or iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty-one (21) days prior to the Confirmation Hearing; provided, however, that the Debtors or Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected. The Debtors or Reorganized Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtors or the Reorganized Debtor that such document is an executory contract or an unexpired lease, or that the Debtors or the Reorganized Debtor have any liability thereunder.

*(b)      Schedules of Assumed Executory Contracts and Unexpired Leases; Inclusiveness*

Each executory contract and unexpired lease listed or to be listed on the Assumption List that relates to the use or occupancy of real property shall be deemed to include: i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption List, and ii) all executory contracts or unexpired leases appurtenant to the premises listed on the Assumption List, including, without limitation, all easements, licenses,

permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises, unless any of the foregoing agreements previously have been assumed.

### (c)    Insurance Policies

The Debtors' insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan and are hereby _assumed_ pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.  Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan.  Nothing contained in the Plan shall constitute or be deemed a waiver or release of any action that the Debtors may hold against any entity, including, without limitation, the insurers under any of the Debtors' policies of insurance.

### (d)    Warranties

All existing executory warranty contracts of the Debtors are hereby _assumed_ pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

### (e)    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute: i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article VII of the Plan, and ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

### 7.02.    Cure of Defaults

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Assumption List.  To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount listed in the Assumption List, such party must file a notice of dispute with the Court and serve such notice on the Debtors by no later than five days prior to the Confirmation Hearing.  Except as may otherwise be agreed to by the parties or provided herein, within ninety days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code.  Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety days of the entry of a Final Order determining the amount, if any, of the Debtors' or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.  If there are any objections filed, the Court shall hold a hearing.  In the event the Court determines that the cure amount is

greater than the cure amount listed by the Debtors, the Reorganized Debtor may elect to reject the contract or unexpired lease and not pay such greater cure amount.

### 7.03.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtors or Reorganized Debtor or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of: i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, ii) notice of entry of the Confirmation Order, and iii) notice of an amendment to the Assumption List. Any Claim not filed within such time will be forever barred from assertion against the Debtors, their Estate, the Reorganized Debtor and their respective property. Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plan.

### 7.04.    Indemnification Obligations

For purposes of the Plan, the obligations of the Debtors to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtors' certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Commencement Date.

### 7.05    Compensation and Benefit Programs

Except as provided in the Plan and Assumption List, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims or Interests under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its directors, officers, and employees who served as directors, officers and employees, respectively, after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby assumed pursuant to sections 365(a) and 1123(b)(2) of the Code; *provided, however*, that the Reorganized Debtor reserves the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

### ARTICLE VIII - MEANS FOR IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN

### 8.01.    General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtors or Reorganized Debtor will be authorized to take all necessary steps, and perform all necessary

acts, to consummate the terms and conditions of the Plan.  In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

**8.02.**    **Corporate Existence and Equity**

Except as otherwise provided in the Plan, Molekule Group, Inc., as the Reorganized Debtor, shall continue to exist after the Effective Date, with all powers of a corporation, pursuant to the applicable law in the jurisdiction in which the Reorganized Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended or superseded by the Plan or otherwise, and to the extent such documents are amended or superseded, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.  Following the Effective Date, the Reorganized Debtor may operate its business free of any restrictions imposed by the Code, the Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order.

On the Effective Date, all outstanding equity interests in the Debtors shall be cancelled and extinguished as set forth in Section 5.10 herein. As contemplated by Section 3.02, in exchange for, and on account of, the DIP Claim and/including the Effective Date Contribution, the DIP Lenders (or their assigns) shall receive 63% of the new equity interests in the Reorganized Debtor as follows, consistent with their respective Pro Rata Contribution Percentage:

(i) Foundry, 27.72%;

(ii) BCC, 15.12%;

(iii) Armistice, 13.86%; and

(iv) SVBC, 6.3%.

As contemplated by Section 5.02, in exchange for and on account of the Allowed SVB Mezzanine Secured Claims, SVB and SVBC (or their assigns) shall each receive 18.5% of the new equity interests in the Reorganized Debtor.

The terms and conditions of the new equity in the Reorganized Debtor, including the form and substance of any and all corporate formation and governance documents, shall be acceptable to the new equity interest holders named herein (the "New Equity Holders") in their sole, absolute, and exclusive discretion.

After the Effective Date, and without further approval of the Court, but subject to the prior written consent of SVB, which consent may be granted, withheld, or conditioned in SVB's sole discretion, the Reorganized Debtor may transfer all of its assets to a new entity ("NewCo"), owned by the New Equity Holders in the same proportions described in this Section, so long as NewCo assumes all outstanding obligations of the Reorganized Debtor.

Subject to the underwriter restrictions in section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities pursuant to the Plan, including the equity interests of the Reorganized Debtor, will be exempt from the registration requirements of section 5 of the

Securities Act or any similar federal, state, or local law in reliance on section 1145 of the Bankruptcy Code. To the extent a holder is an underwriter, the offering, issuance, and distribution of securities pursuant to the Plan will be made by the Reorganized Debtor in reliance upon other applicable exemptions from registration.

### 8.02.1. Officers and Directors of the Reorganized Debtor

Following the Effective Date, the officers of the Reorganized Debtor shall initially be as follows:

> a. Jason DiBona, Chief Executive Officer;

> b. Ryan Tyler, Chief Financial Officer; and

> c. Ryan M. Patch, Secretary and Chief Legal Officer.

Following the Effective Date, the directors of the Reorganized Debtor shall initially be as follows:

> a.    David Helfet, M.D.;

> b.    Michael Senft;

> c.    Thomas P. McCaffrey;

> e.    Timothy J. Scannell;

> f.    Stephen M. Ward;

> g.    Amin J. Khoury; and

> h.    Brad Feld.

### 8.03.    The Reorganized Debtor and Vesting of Assets

Except as otherwise expressly provided in the Plan and the Confirmation Order, on the Effective Date, the Reorganized Debtor shall be vested with all of the property of the Estates, free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to those of holders of Claims and holders of Equity Interests.  The Reorganized Debtor shall assume all of the Debtors' rights, obligations and liabilities under the Plan.  Pursuant to section 1141 of the Code, the property of the Estates shall be transferred to and vest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and Interests of holders of Claims and Equity Interests, including any party asserting any claims against or interests in the Debtors, except as otherwise expressly provided in the Plan or the Confirmation Order.

### 8.04.    Effectiveness of Securities, Instruments and Agreements

On the Effective Date, all documents described in the Plan and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or

document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### 8.05.   Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors or members of the Debtors or the Reorganized Debtor or its successors in interest under the Plan, including, without limitation, the vesting of the property of the Estates into Molekule Group, Inc. as the Reorganized Debtor, the authorization to issue or cause to be issued the new equity interests and documents relating thereto, the adoption of the Reorganized Debtor's articles of incorporation, the adoption of the Reorganized Debtor's bylaws and other governance documents, and the election or appointment, as the case may be, of directors or officers of the Reorganized Debtor pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to applicable general business organization law, without any requirement of further action by the stockholders or directors of the Debtors or Reorganized Debtor.

### 8.06.   Approval of Agreements

Entry of the Confirmation Order shall constitute approval of the Assumption List, Plan and all such transactions, subject to the occurrence of the Effective Date.

### 8.07.   No Change of Control

Except as provided in the Plan and Confirmation Order, any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtors that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

### 8.08.   Administration After Effective Date

After the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of their property, free of any restrictions of the Code and Rules.

### 8.09.   Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 8.10.   Causes of Action

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtors, other than Avoidance Actions, shall become assets of the Reorganized Debtor, which shall have the authority to commence and prosecute such Actions for the benefit of the Estate.   After the Effective Date, the Reorganized Debtor shall have the authority to

compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Actions without the approval of the Court.

As of the Effective Date, any and all Avoidance Actions shall become assets of the Reorganized Debtor for the benefit of holders of Allowed General Unsecured Claims pursuant to Section 5.08 of the Plan.

### 8.11.    Discharge of Debtors and Reorganized Debtor

*Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever and whenever arising, including any interest accrued on such Claims from and after the applicable petition date, against the Debtors, their Estates, the Reorganized Debtor, any of the assets or properties under the Plan.  Except as otherwise provided herein, i) on the Effective Date, all such Claims against the Debtors and Equity Interests in the Debtors shall be satisfied, discharged and released in full, and ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.*

### 8.12.    Injunction Related to Discharge

*Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtors, or Equity Interest in the Debtors, are permanently enjoined, on and after the Effective Date, from: i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtor, with respect to any such Claim or Equity Interest, ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors or the Reorganized Debtor on account of any such Claim or Equity Interest, iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or the Reorganized Debtor, or against the property or interests in property of the Debtors or the Reorganized Debtor, on account of any such Claim or Equity Interest, and iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation from the Debtors or the Reorganized Debtor, or against the property or interests in property of the Debtors or the Reorganized Debtor, on account of any such Claim or Equity Interest.  The injunctions described herein shall extend to the successors of the Debtors, including, without limitation, the Reorganized Debtor, and their respective properties and interests in property.*

### 8.13.    Reserved

### 8.14.    Release by Estates of Officers, Managers, and Directors

*Notwithstanding anything contained in the Plan, other than Section 11.04 which is separate and in addition to this Section 8.14, pursuant to section 1123(b) Code, for good and*

*valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each OMD Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtor, and their respective Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any claim, Action, Avoidance Action, or cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, Actions, Avoidance Actions, or causes of action including any derivative claims, asserted or assertible on behalf of any of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtor, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against or Interest in a Debtor or any other Entity, (collectively, the "<u>Debtor Releases</u>"). Notwithstanding anything herein to the contrary other than Section 11.04, the Debtor Releases will not: (i) apply to any pre-Effective Date claims against Debtors' directors and/or officers <u>to the extent insurance coverage exists</u> under any Debtor pre-Effective Date director and/or officer insurance policy for the defense and indemnity of such claim (herein an "Insured Claim"). In the event of an Insured Claim such director's and/or officer's sole liability and responsibility for any judgment arising from such claim shall be strictly limited to the amount actually paid out, if any, by the insurance company under such insurance policy, and any director and/or officer liability and responsibility for any and all other amounts are forever released by this Section 8.14; or (ii) release post-Effective Date obligations of any entity under the Plan or any other document, instrument, or agreement executed to implement the Plan (unless expressly cancelled by the Plan); or (iii) affect such releasing parties' rights that remain in effect from and after the Effective Date to enforce the Plan or as otherwise provided in any order of the Bankruptcy Court.*

### 8.15.  <u>Injunction Against Interference with the Plan</u>

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims, Equity Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

### 8.16.  <u>Votes Solicited in Good Faith</u>

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

### 8.17.  <u>Reserved</u>

## ARTICLE IX - CONFIRMATION AND
## EFFECTIVENESS OF THE PLAN

**9.01.    Conditions Precedent to Effective Date**

The Plan shall not be consummated, and the Effective Date shall not occur, unless and until the following conditions have occurred or been duly waived:

(i)    The Court shall have approved the information contained in the Disclosure Statement as adequate;

(ii)    The Confirmation Order, and corporate formation and governance documents for the Reorganized Debtor, shall be in form and substance reasonably acceptable to the Debtors, the DIP Lenders, SVB, and SVBC, and shall and include, among other things, a finding of fact that the Debtors, the Reorganized Debtor, and its respective present and former members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions;

(iii)    The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(v)    The Court shall have entered an order (contemplated to be part of the Confirmation Order) authorizing and directing the Debtors and Reorganized Debtor to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan;

(vi)    All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtors and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof;

(vii)    No order of a court shall have been entered and shall remain in effect restraining the Debtors from consummating the Plan; and

(viii)    The statutory fees owing to the United States Trustee shall have been paid in full.

**9.02.    Effect of Failure of Conditions**

If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtors or (2) prejudice in any manner the rights of the Debtor.

**9.03.    Waiver of Conditions**

Expect with respect to Section 9.01(ii) and Section 9.01(iii), which shall both require the consent of the DIP Lenders, SVB, and SVBC, the Debtors may waive one or more of the other conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 9.01 of the Plan.

## ARTICLE X - RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)     to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b)     to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)     to hear and determine all Actions, including, without limitation, Actions commenced by the Debtors, the Reorganized Debtor, Plan Administrator, or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)     to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)     to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)     to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Assumption List, or any order of the Court, including, without limitation, the Confirmation Order;

(i)     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)     to recover all Assets of the Debtors and Property of their Estate, wherever located;

(l)     to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)    to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtors for all taxable periods through the Effective Date for all taxable periods of the Debtors through the liquidation and dissolution of such entity);

(p)    to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)    to hear any other matter not inconsistent with the Code; and

(r)    to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## ARTICLE XI - MISCELLANEOUS PROVISIONS

### 11.01.  Effectuating Documents and Further Transactions

The Debtors or Reorganized Debtor, as the case may be, are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 11.02.  Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including new common stock, creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, in connection with a transfer, or sale, including but not limited to the Debtors' cases, in furtherance of, or in connection with any agreements, deeds, bills of sale or assignments, or any other documents executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 11.03.  Authorization to Request Prompt Tax Determinations

The Reorganized Debtor is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

### 11.04.  Exculpation

*Subject to the occurrence of the Effective Date, neither the Debtors, the Reorganized Debtor, nor any parties to the Restructuring Support Agreement assumed by the Debtors pursuant to the Court's authorization thereof, or any of their respective professionals, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the cases of the Debtors, the negotiation, execution, or performance of the Restructuring Support Agreement and the transactions contemplated thereby, the negotiation, execution, or performance of the DIP Financing,, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan;  provided, however, that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.*

### 11.05.  Injunction Relating to Exculpation

*The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtors, the Reorganized Debtor and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.*

### 11.06.  Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 11.07.  Payment of Statutory Fees

Until the Effective Date of a confirmed plan, the debtors shall continue to file the UST Form 11-MOR, Monthly Operating Report and shall timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) (the "Quarterly Fees"). Within two business

days of the Effective Date, the reorganized debtors and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Following the Effective Date of the confirmed plan, the reorganized debtors and any other authorized parties who have been charged with administering the confirmed plan shall file the UST Form 11-PCR, Post-confirmation Report, every calendar quarter and shall timely pay the U.S. Trustee Quarterly Fees until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.

### 11.08.  Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtors shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtors at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtors, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

### 11.09.  Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.  The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.10.  Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtors or any other Person, an admission against interests of the Debtors, nor shall it prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtor.

### 11.11.  Binding Effect Notices

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

### 11.12.  Notices

All notices, requests and demands to or upon the Debtors or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed.  Notices shall be sent or delivered to the following:

**To the Reorganized Debtor:**

Molekule Group, Inc.
Attn: Ryan M. Patch
10455 Riverside Drive, Suite 100
Palm Beach Gardens, Florida 33410
Ryan.patch@molekule.com

**With a copy to:**

Bradley S. Shraiberg, Esq.
Shraiberg Page PA
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Phone: (561) 443-0800
Fax: (561) 998-0047
Email: bss@slp.law

### 11.13.  Governing Law

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

### 11.14.  Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtors or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 11.15.  Section 1125(e) of the Code

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code.  As of the Confirmation Date, the Debtors and their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer and issuance of new securities under the Plan.

### 11.16.  Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Debtors shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 11.17.  No Admissions

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 11.18.  Waiver of Bankruptcy Rule 3020(e) and 7062

The Debtors may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

### 11.19.  Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

### 11.20.  **Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

### 11.21.  **Final Decree**

Once there has been Substantial Consummation of the Plan, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close the Case.

### 11.22.  **Inconsistency**

In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 11.23.  **No Interest or Attorneys' Fees**

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the applicable petition date, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 11.24.  **Successors and Assigns**

The Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

### 11.25.  **Headings**

The headings of articles, paragraphs and sub-paragraphs in the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

### 11.26.   **No Penalty for Prepayment**

Neither the Debtors nor the Reorganized Debtor shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any claim treated under the Plan.

### 11.27.  **Savings Clause**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 11.28.  **Remedy of Defects**

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

## ARTICLE XII - CONCLUSION

The aforesaid provisions shall constitute the Joint Plan of Reorganization of the Debtors. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtors, the Reorganized Debtor, and all creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Bankruptcy Code.

Molekule Group, Inc.

By: _____
      Ryan M. Patch, Chief Legal Officer

Molekule, Inc.

By: _____
      Ryan M. Patch, Chief Legal Officer

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically served on those parties as listed on the Court's Case Management / Electronic Case Filing system on December 22, 2023.

Respectfully submitted,

Bradley S. Shraiberg
Eric Pendergraft
SHRAIBERG PAGE P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: bss@slp.law
Email: ependergraft@slp.law

By: _/s/ Bradley S. Shraiberg_
    Bradley S. Shraiberg
    Florida Bar. No. 121622
    Eric Pendergraft
    Florida Bar No. 91927